[Civ. No. 1780.    Third Appellate District.—February 21, 1918.]

## LOUIS M. HICKMAN (a Corporation), Respondent, v. WILLIAM J. JOHNSON, Appellant.

VENDOR AND VENDEE—DAMAGES FOR FRAUD—DUTY OF VENDEE.—Where a vendee pays a part of the purchase price and enters into possession of the property, and gives his note secured by mortgage on the property for the balance, he must pay the balance before he can claim damages for fraud in the purchase.

MORTGAGE—ACTION FOR FORECLOSURE—DEFENSE OF FRAUDULENT REPRESENTATIONS—PLEADING—INSUFFICIENT CROSS-COMPLAINT—FAILURE TO SHOW DAMAGE.—In an action for the foreclosure of a mortgage, a cross-complaint based upon alleged fraudulent representations made by plaintiff as to the ownership of a water ditch to be conveyed to defendant for the purpose of irrigating the mortgaged

land fails to state a cause of action, in the absence of an express allegation as to any appreciable damage done by reason of the failure to convey, there being no averment as to what the ditch cost, or its value, or what expense would be incurred in obtaining a substitute for it, nor how much the market value of the land would be affected by the question as to whether the ditch was appurtenant thereto.

ID.—SPECIAL DAMAGES—LOSS OF CROP—INSUFFICIENT CROSS-COMPLAINT —KNOWLEDGE OF NONOWNERSHIP OF DITCH BEFORE PLANTING.— In such an action, the defendant cannot by cross-complaint obtain special damages for loss of crop due to alleged failure of plaintiff to furnish defendant with necessary water ditches, where, according to the allegations of the cross-complaint, the defendant, before planting the crop, had complete knowledge that plaintiff did not own the ditch and that plaintiff had failed to make good its representations.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

Hawkins & Hawkins, for Appellant.

L. J. Maddux, Henry C. McPike, and James F. Peck, for Respondent.

BURNETT, J.—This appeal is from the judgment decreeing the foreclosure of a mortgage and from the order denying the motion for a new trial.

The only complaint against the action of the court is based upon the order sustaining the demurrer to the amended cross-complaint and dismissing it from the files.

The action was brought upon several promissory notes for the sum of $24,075 and interest and for the foreclosure of a mortgage to secure the payment of the same. The notes provided that in case of a failure to pay the interest, as it became due, the payee might elect to consider the whole amount due and bring an action accordingly. There is no controversy as to the failure of the defendant to make the required payments of interest. Indeed, the only payment made by him was the sum of about six thousand dollars on the selling price of $30,175, made at the time of the execution of the conveyance and of said promissory notes. The defense, however, upon which defendant relied, and still relies, is based upon

the claim of fraudulent representations made by the plaintiff. Involved therein are two elements or examples of fraudulent conduct. The first relates to a misrepresentation as to the ownership of a certain ditch, known as the "Dallas Ditch"; the second, to the failure of plaintiff to construct another ditch from the said Dallas Ditch to the land conveyed by plaintiff to defendant.

The material representation as to the Dallas Ditch which the defendant claims to have been fraudulent is as follows: "That as an inducement to enter into the said contract of purchase, that is to say, as an inducement to pay the said purchase price, execute the said notes and mortgage, and accept the said land, the said plaintiff, through its agents, officers, or representatives, represented to this defendant that it was able and entitled to grant to him the right to use the said Dallas Ditch referred to in said agreement, and that said Dallas Ditch was of sufficient size to irrigate all of the land entitled to be irrigated therefrom and more particularly the premises conveyed to this defendant, and that it carried at least twenty-seven second-feet of water."

As seen, this is not an express allegation that plaintiff represented that it owned the said Dallas Ditch. But we may accept it as a sufficient averment of that fact. This ownership is negatived in appropriate language, as is also the capacity of said Dallas Ditch to supply the needed water.

Again it is alleged: "That at said time it was represented to this defendant, in said agreement of April 26th, that the said plaintiff would make an extension of what is known as the Dallas Ditch, and that said extension would be brought west and flumed across the Ceres Canal on the west line of said land at a point north, and that said ditch and flume would be complete and ready for the conveyance of water therein by October 1, 1910. That all of said representations were false and fraudulent, and were known by the plaintiff and its agents to be false and fraudulent, and were made with the specific purpose of inducing this defendant to enter into the said transaction and agreement, and did so induce him."

We may assume for the purposes of the case that said representations were material, and that defendant had a right to and did rely upon them. But it is apparent that an additional element must be shown in order to constitute a cause of action in behalf of defendant, and that is, that he

was damaged by said conduct of the plaintiff. If it appears from said cross-complaint that there is no sufficient allegation of facts to show that defendant was injured without his own fault by the conduct of plaintiff,—reprehensible as it might be,—then the action of the court in sustaining the demurrer to said amended cross-complaint was entirely justified. It is claimed by respondent that such is the case and this consideration may invite inquiry.

We may first direct our attention to the injury, if any, caused by the plaintiff's representations as to the ownership of said Dallas Ditch. It is apparent that there is no express allegation as to any appreciable damage done to the defendant by reason of the failure of the plaintiff to convey the ownership of said ditch. There is no averment as to what said ditch cost, or of its value, or what expense would be incurred in obtaining a substitute for it, nor how much the market value of the land would be affected by the question as to whether the said ditch was appurtenant thereto.

Indeed, in reference to both specifications of fraud it may be said that the allegations of damage are quite defective. We may notice them briefly.

*The first is*: "That said land without water is not worth to exceed twenty dollars per acre and is only valuable in an amount greater because of the capacity or power of obtaining water, and if the said plaintiff fails to furnish the adequate means for irrigating said premises, then said premises not irrigated are not worth to exceed twenty dollars per acre."

But, it is clear from the other allegations of the cross-complaint that plaintiff did not promise to furnish water to said lands, and it is quite apparent that the ownership of the Dallas Ditch is entirely distinct from the ownership of sufficient water to irrigate said premises.

Again, special damage is claimed in consequence of the money expended in planting a crop, and of the fact that the crop failed and perished for lack of water, and "that said failure to obtain said water was caused wholly by the failure of the plaintiff to furnish the defendant with the necessary ditches to convey the said water to his said land as agreed by it and hereinabove set forth." The failure of said crop was placed at the sum of five thousand two hundred dollars, and the cost of putting in the crop at the sum of six hundred dollars, but it is apparent that this element of damage cannot

be considered for the reason that, according to the allegations of the cross-complaint, the defendant, before planting said crop, had complete knowledge that plaintiff did not own the said Dallas Ditch and could not therefore convey any interest in it to the defendant, and, also, that it had failed according to its agreement to complete an adequate connecting ditch, and, indeed, it further appears that the plaintiff had refused to make good its said representations. Therefore, if defendant, with knowledge of these facts and the failure of plaintiff to complete its agreement, planted a crop, incurring the cost thereof, and took a chance of having a crop without irrigation, it must be apparent that any loss thereby incurred must be chargeable to his own want of care, no matter how remiss might have been plaintiff in its conduct toward the defendant. Besides, it may be said as to the allegation in reference to the connecting ditches, that it was a promise to do something in the future, and, in order to state a cause of action for fraud, it must be alleged that said promise was made with the intention of deceiving or misleading the defendant.

There is no such allegation. It is not sufficient to allege that such promise was false and fraudulent. (*Rheinguns* v. *Smith*, 161 Cal. 362, [Ann. Cas. 1913B, 1140, 119 Pac. 494].)

Then follows this allegation: "That it would cost this defendant the sum of at least three thousand dollars to acquire rights of way and construct an irrigation ditch sufficient for the carrying of the water from the distributing lateral or canal of the Turlock Irrigation District sufficient to irrigate the said premises, and that unless such ditch is constructed in accordance with said agreement the defendant will be compelled to incur such expense."

We may assume that by this averment the cross-complainant intended to state the cost of a waterway that would answer the same purpose as the Dallas and the connecting ditch, if furnished, as represented and agreed, by plaintiff. Thus considered, it may be regarded as an allegation of damage suffered by reason of the dereliction of the plaintiff. It is, however, uncertain for the reason that it does not appear how much it would cost to construct a substitute for the Dallas Ditch, concerning which the fraud is sufficiently pleaded.

The only other specification of damage is as follows: That by reason of the failure of the plaintiff to furnish said ditches and comply with said agreement, the consideration for said notes and mortgage has entirely and completely failed, and that without such water the said land is not worth a sum greater than that heretofore paid by this defendant, and that this defendant has been damaged by such breach of contract and failure to comply with the terms of said agreement, in addition to the sums herein elsewhere set forth, in the sum of nine thousand dollars.''

But, as already seen, there was no promise or agreement on the part of plaintiff to furnish said water to said land, and, therefore, the difference in value between the land as irrigated and without water cannot be considered. Indeed, this general allegation is nullified, or at least modified, by the averment that it would cost the sum of three thousand dollars to acquire and construct ditches sufficient for the irrigation of said premises. In other words, it sufficiently appears that the failure of the plaintiff as to said ditches involved a loss in the value of the land to the extent of only three thousand dollars. It is thus apparent that in the respects indicated, the cross-complaint is decidedly open to criticism, but probably it is not fatally so in view of the liberality with which pleadings should be regarded. We may even admit for the present purposes that it legally appears that appellant was damaged to the extent of eight thousand eight hundred dollars by the fraudulent representations of respondent.

But if we grant a fraud was committed, as claimed by the defendant, there was due on said promissory notes to plaintiff the sum of $15,275, in excess of the counterclaim, together with interest, but it nowhere appears in said cross-complaint that this amount or any amount was tendered or that appellant is ready, willing, or able to pay said amount or any amount. In fact, he insists that he is not required to do so before he can maintain his action for damages; and that brings us to the question, admittedly important and vital, whether the doctrine declared and expounded in the case of *Hines* v. *Brodie,* 168 Cal. 507, [143 Pac. 729], is applicable to the cross-complaint of defendant filed herein.

Therein are pointed out the two different remedies that are open to one who has been defrauded in a transaction. One of these is rescission, whereby, upon the discovery of the fraud,

he repudiates the contract and offers to return what he has received and seeks a restoration to his original position, claiming, of course, whatever damage he may have suffered by reason of the unconscionable conduct of the other party. The pursuit of the other remedy involves an affirmation of the contract, and also a claim for damages on account of the fraud. There is no claim of rescission in the case before us. It is admitted that the defendant elected to stand upon the contract. In such case it is held in the Hines decision, *supra,* that he must assume the burdens as well as receive the benefits of the contract. In other words, if, instead of disavowing the contract when he discovers the fraud, he chooses to appropriate whatever advantages he may receive through the terms of said agreement, he cannot in the same breath repudiate the terms that are of advantage to the other party. He can neither affirm nor disaffirm in part. In the said decision it is declared: ''Here the vendee is obliged to accept the burden of the contract with its benefits, according to its terms, with the right to a recovery for the fraud based upon the fact that the benefits which he receives are not those which, under the representations of the vendor, he was entitled to receive.''

It is therein stated that the true principle is well declared in the following quotation from *Whitney* v. *Allaire,* 1 N. Y. 305: ''It is true that if a party affirms a contract with knowledge of the fraud, he affirms it wholly, and this whether it is executory or partly executed. But in neither case does he affirm it as a contract made in good faith. He consents to be bound by the provisions of the agreement but does not thereby release or waive his claim for damages arising from a fraud collateral to the agreement.''

It is true that the Hines case was somewhat different from this in its facts, but the principle announced and emphasized in the decision is that where the defrauded party affirms the contract but seeks damages for the collateral fraud, he must, antecedently to his recovery, perform his matured obligations and avow his readiness and ability to perform whatever by the terms of the contract may be required of him in the future. The purchaser therein was not in default, as no installment of the price was due at the time suit was brought, and, of course, the question of performance or default did not arise. But the consideration of ability and willingness

to perform the covenants which were to mature in the, future did arise, and it was this that the supreme court had in view; and it was held to be insufficient to allege that the plaintiff "at the time of said offer to pay, ever since and now is ready, able, and willing to pay said purchase price upon the conditions in said contract *until discovery of said fraud.*" It was this latter phrase, which we have italicized, that the supreme court regarded as vitiating the tender. If the party relies upon the contract and seeks its protection, he must be ready and willing to meet its demands not only up to the time of the discovery of the fraud, but at all times during which he claims its benefits.

It is the claim of appellant that a difference must be recognized between an executory and an executed contract. Manifestly, a different situation is created in these two instances. If the contract is executed, there is, of course, nothing to be done or performed under its terms. There exists no necessity nor propriety for a tender or offer of performance, and nothing is required of the defrauded party prior to his maintenance of an action for damages for the fraud. But the contract before us is not executed; it is partly executed and partly executory, as was the contract in the Hines case. Therein the purchaser had paid a part of the purchase price of the land and had entered into the possession of it. To that extent it was executed. The balance of the price he had not paid, however, nor had he received the conveyance, and therein the contract was executory.

So here, the purchaser paid a part of the purchase price and entered into possession, but he also received a deed. Nevertheless, he owed and still owes the balance of the purchase price, and to that extent the contract is executory. It is true that he gave his promissory notes for the balance, but that constitutes simply written evidence of the indebtedness. He must make the payment of those notes in order to execute the contract. Nor does it matter that he gave a mortgage to secure their payment. That does not relieve him from the obligation to pay the indebtedness, nor would his relation to the contract be different in the case of a mortgage from that of a vendor's lien. In either event there is security for the performance and the duty to perform his promise is just the same.

Nor is there anything inequitable in this requirement. The defendant can avoid it by rescinding after discovery of

the fraud. But if he chooses to take advantage of the complete execution of the contract on the part of the vendor, there is nothing unjust in compelling him also to execute before he is permitted to avail himself of the other remedy. Applying this principle to the present case, we may notice that as early as October 1, 1910, appellant discovered the fraud. Nevertheless, he made no effort to rescind but entered into possession of the property, and thereafter made no further payment either of interest or principal of the indebtedness. The suit was commenced on the notes in April, 1912. The answer and cross-complaint of the defendant was filed in May of the same year. The cause did not come on for trial until January, 1914, when appellant was permitted to file an amended cross-complaint. By stipulation the decision was reserved until the supreme court had finally determined the Hines case. The decree was not rendered, then, until March 31, 1915. Therefore, for nearly four years, we must presume the defendant remained in possession and enjoyed the property without the payment of any interest or rent, and he may still be in possession. Under such circumstances, it is not unfair to insist that he shall supplement his constructive affirmance by actual performance of the contract.

It is not a question of whether the same result might not be reached by allowing the defendant credit for the fraud, but whether he shall be permitted to blow hot and cold at the same time, and insist upon the contract as far as advantageous to himself, but speculate upon his chances of recovery for the fraud as a substitute for the performance of his own covenants under the contract.

But, at any rate, in the case here it is plain that appellant has suffered damages in a sum no greater than eight thousand eight hundred dollars, and he should, at least, have tendered the difference between that and the amount due under the contract.

We think the decision was just, and the judgment is therefore affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 25, 1918.