## MOORE v. JONES. (No. 11288.)

(Court of Civil Appeals of Texas. Fort Worth.
Nov. 7, 1925.)

**1. Appeal and error ⬅═1002—Finding of jury on conflicting evidence and judgment thereon not disturbed on appeal.**

Finding of jury on conflicting evidence that assignee of oil lease did not produce oil within reasonable time as required by lease, and that reasonable time expired prior to commencement of suit by assignor, and judgment thereon, could not be disturbed on appeal.

**2. Pleading ⬅═403(1)—If one party expressly avers or confesses material fact omitted by other party, omission is cured.**

If one party expressly avers or confesses material fact omitted by the other party, omission is cured.

**3. Mines and minerals ⬅═74—Assignor of oil lease held required to allege and prove that assignee's lack of diligence caused failure to produce sufficient oil to pay for assignment before recovering money.**

Where oil lease requiring assignee to proceed with diligence provided for payment for assignment of lease in oil, assignor, before recovering payment in money, must allege and prove that oil sufficient to pay could have been produced by exercise of reasonable diligence, and that failure to produce oil was due to defendant's lack of diligence.

**4. Judgment ⬅═18(1) — Courts cannot render judgment not supported by pleadings.**

Until their action is called into exercise by pleading, courts cannot render judgment in favor of person any more than they can render judgment against person not within their jurisdiction.

**5. Pleading ⬅═403(3)—Answer of assignee of oil lease held not to cure defect in assignor's petition.**

Allegation in answer of assignee of oil lease that he used due diligence in developing lease held not to cure failure of assignor's petition to allege that assignee's failure to pay for assignment in oil was due to assignee's failure to use diligence in developing lease.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by W. H. Jones against W. M. Moore. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Kay, Akin & Smedley, of Wichita Falls, for appellant.

Fischer & Fischer, of Wichita Falls, for appellee.

### Opinion.

BUCK, J. W. H. Jones, on October 23, 1922, assigned a lease for oil and gas on a certain 40-acre tract of land in Wichita county. By the terms of the assignment, the as-signee, W. M. Moore, paid $3,000 in cash, and the assignment further provided:

"W. H. Jones is to receive, as part consideration for this sale and transfer, and the assignment of said lease, $3,000, with interest on said amount from the date of this transfer at the rate of 10 per cent. per annum; said amount to be paid in oil from the production of said land, the said lessee or his assigns, to properly develop the same, drilling to commence within reasonable time from the date of this agreement, and to be prosecuted with due diligence until said tract is properly tested, or developed; and, in case of production, one-half of the oil produced and saved from said tract to be delivered in the pipe line to the credit of the said W. H. Jones, or his assigns, free of charge, until said amount is so paid, a lien being here retained on said land, to the fulfillment of this agreement."

On April 24, 1924, Jones filed suit against Moore for the alleged debt of $3,000, together with interest at 10 per cent. from the date thereof, attorneys' fees, etc. In his amended petition, filed September 9, 1924, and the only petition in the record, plaintiff alleged that the defendant had paid him the sum of $3,000 in cash, and agreed to pay the plaintiff within a reasonable time thereafter an additional sum of $3,000, with interest thereon at the rate of 10 per cent. per annum until said debt was paid. He alleged that, in transferring and assigning said oil and gas lease to the defendant, plaintiff expressly retained a vendor's lien upon said oil and gas leasehold estate to secure the payment of said deferred payment of $3,000, and attached to his pleading a certified copy of the assignment, which was made a part of the petition "for reference to its terms, provisions, and conditions." He further pleaded:

"Plaintiff would further show to the court that said transfer and assignment provides that said $3,000 and interest may be paid by the defendant to the plaintiff by the defendant delivering to the pipe line for the credit of the plaintiff one-half of the oil produced and saved from said oil and gas leasehold estate, until the value thereof amounts to said sum of $3,000 and interest thereon; that it is further provided in said transfer and assignment that the defendant would commence the drilling upon said leasehold estate for the discovery of oil within a reasonable time after the date of said transfer, and would prosecute the drilling of wells thereon with due diligence until said leasehold estate is properly developed.

"Plaintiff would further show to the court that it was contemplated and intended by the plaintiff and the defendant, by the execution and delivery of said assignment and transfer of said oil and gas lease by the plaintiff to the defendant, that the defendant would pay to the plaintiff said deferred payment of $3,000, and interest at the rate of 10 per cent. per annum thereon within a reasonable time after October 23, 1922, the date of said transfer and assignment, but that the defendant would have the right and

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

privilege of paying said sum of $3,000 and interest thereon to the plaintiff by delivering to the pipe line company or other purchasers for the credit of the plaintiff one-half of the oil produced from said leasehold estate until the value thereof amounted to $3,000 and accrued interest, provided that by paying the plaintiff in this manner the defendant paid said debt within a reasonable time after October 23, 1922.

"Plaintiff would further show to the court that it was expressly and impliedly agreed between the plaintiff and the defendant that said deferred payment of $3,000 and interest thereon should be paid within a reasonable time after October 23, 1922, by the defendant delivering to the plaintiff, or for his credit, one-half of the oil produced from said leasehold estate, and, if said sum and interest thereon was not paid in this manner within a reasonable time, then the whole of said debt and interest would become due and payable; that a reasonable time within which the defendant should have paid the plaintiff one-half of the oil produced from said leasehold estate expired on October 23, 1923, one year from and after the date of the conveyance of said property to the defendant, or at least long prior to the date of the filing of this suit; that at the expiration of said reasonable time, which was on October 23, 1923, or at least up to the time of the filing of this suit, the plaintiff has never received any oil produced from said leasehold estate, neither has he received any portion of his debt or interest, and the whole of said debt, together with interest thereon at the rate of 10 per cent. per annum from and after October 23, 1922, is now long past due and unpaid; that the plaintiff has demanded payment of said debt from the defendant, together with accrued interest thereon, but the defendant has failed and refused to pay the same, or any part thereof, all to plaintiff's damage in said sum of $3,000 and interest thereon at the rate of 10 per cent. per annum from and after October 23, 1922; that by the failure and refusal of defendant to pay said debt when the same became due and payable as aforesaid, the plaintiff is entitled to have his lien foreclosed upon said leasehold estate against the defendant and all other persons claiming any interest therein, which lien plaintiff says is a first and prior lien upon said oil and gas leasehold estate."

The defendant answered by a general demurrer, and a general denial, and further pleaded that plaintiff's suit had been prematurely brought because the debt therein sued for was not due; that the defendant bought the property and paid $3,000 cash, and obligated himself to pay the further consideration of $3,000, same to be paid by running one-half of the oil produced from said land to the credit of the plaintiff, and the defendant expressly denied that he had not complied with the terms and conditions of said assignment, but pleaded that, under the facts and circumstances, he had fully and in good faith complied with all of the requirements thereof; that at the time of the filing of the answer he had one producing oil well on said land, and was running to the credit of the plaintiff one-half of the oil being produced

from the same, and therefore, because of said fact, the plaintiff's suit herein should be abated and dismissed at plaintiff's cost.

Defendant further pleaded that, within a reasonable time after his purchase, he began the drilling of a well upon said land and prosecuted the drilling of the same with due diligence to a depth of approximately 1,800 feet, which was reached the latter part of August, 1923; that at first the hole appeared to be dry, and drilling of the same was suspended temporarily for a few days, and that shortly thereafter, to wit, during the month of September, 1923, the defendant entered into a written and oral contract and agreement with plaintiff, whereby the defendant agreed to resell said property, as it then stood, to the plaintiff for the sum of $5,000 cash; that the execution of the former conveyance of said property was delayed at the instance of the plaintiff, because the plaintiff was unable to raise the cash consideration, as agreed upon; that the plaintiff asked for an extension of time for the consummation of said deal, which extension the defendant granted; that said negotiations continued until the spring of 1924; that, prior to the entering into of said agreement of resale, the said hole, which defendant had drilled upon said land, unexpectedly and during suspension of the drilling suddenly blew itself in with a small showing of oil, and that a short time thereafter the aforesaid negotiations between the parties plaintiff and defendant began; that during the month of April, 1924, it appeared to the defendant that plaintiff could not or would not comply with said contract, and would not or could not raise and pay the said $5,000 cash consideration, the defendant withdrew said offer, and at his own cost and expense at once resumed operations on said well, and at great cost and expense completed the same to a producing oil well; that plaintiff well knew, at all times, that defendant was expending money in the completion of said well, but that he "made no demand for the payment of said $3,000 of oil consideration in cash, and in no way indicated any intention on his part other than that of complying with his said contract and purchasing the said property from the defendant, as aforesaid"; that, because of these acts and representations and conduct on the part of the plaintiff, and because of the further fact that the plaintiff relied upon the same, believing that they were true, and believing that plaintiff could and would carry out his said agreement for the purchase of said property in a very short time, the defendant deferred to expend further money in the development of said lease.

He further pleaded that, if the court should construe the contract sued upon by the plaintiff as not being contingent (that is, if the court should hold that the contract on its face was payable in money, and not in oil), then defendant pleaded that the contract was so

written by mutual mistake of the parties and of the scrivener, and prayed that the contract should be reformed so as to provide that the unpaid $3,000 should be payable only in oil, as produced on the land.

The cause was submitted to a jury on special issues, and the jury found:

(1) That the defendant, W. M. Moore, did not produce oil upon the property in question within a reasonable time under all of the circumstances.

(2) That the parties, at the time the contract was made, mutually intended that the $3,000 deferred payment should be payable only in oil.

(3) That a reasonable time had expired from and after October 23, 1922, and before the filing of the suit, for the defendant, Moore, to pay to the plaintiff, Jones, the sum of $3,000 and interest.

Upon this verdict, the court entered judgment for plaintiff for debt of $3,000, with interest at the rate of 10 per cent. per annum from and after October 23, 1922, and all costs of suit. It was further ordered that the vendor's lien of the plaintiff be foreclosed against all the right, title, and interest of the defendant in and to all the oil and gas leasehold estate covering the land in question. From this judgment the defendant has appealed.

Appellant's first proposition is that, where a provision in a contract, in which an oil and gas lease was assigned, called for a payment of $3,000, "said amount to be paid in oil from the production on said land, said lessee or his assigns to properly develop the same, drilling to commence within a reasonable time from the date of this agreement, and to be prosecuted with due diligence until said tract is properly tested or developed, and in case of production, one-half of the oil produced and saved from said tract to be delivered to the credit of grantor until the amount is paid," such an obligation is payable only in event oil is produced in sufficient amount from the premises, and is not an unconditional promise to pay the $3,000 in money within a reasonable time; that judgment could not be rendered in favor of the plaintiff for the $3,000 in the absence of allegations that oil sufficient to make the payment to plaintiff was not produced on account of the negligent failure or willful refusal of the defendant to develop the property. He further contends that the finding of the jury that the defendant did not produce oil on the property in controversy within a reasonable time, under all the circumstances, is irrelevant and immaterial, in the absence of any pleading on the part of the plaintiff that the defendant failed to develop the lease or produce oil within a reasonable time.

[1] The evidence in this case shows that, within a few weeks after the assignment was executed from plaintiff to defendant, defendant began drilling. Plaintiff testified that defendant started to drill some time in February, 1923, about four months after the assignment was made. The defendant testified that at the time of his purchase of the lease the plaintiff had a star rig and derrick on the ground; that defendant told plaintiff he wanted to drill, but that he could not use the plaintiff's rig and derrick; that he began to drill as soon as the derrick was removed, about two or three weeks later. He testified at length as to the difficulties 'and trouble he had in drilling the well, and that he employed several drillers, and that they were occupied for a considerable time in trying to get out of the hole strings of tools that had dropped in there, and also in trying to get out the casing that had been placed therein. He testified that he paid more than $20,000 towards getting a producing well at this one location. He testified that some time in September, 1923, the plaintiff came to him and wanted to know what he would take for his interest in the lease; that he told plaintiff that he would take $5,000, and a release of all claims held by plaintiff against him; that plaintiff accepted his proposition, and went away, supposedly to get the money; that he brought back a man named Griswold, and that Griswold talked about buying an interest in the property; that along in April, 1924, becoming convinced that Jones could not or would not raise the money to purchase the lease, he renewed his efforts towards making the well a producer; that soon thereafter he learned that the plaintiff had sued him; that he had a producing well on the land at the time of the trial, producing 14 or 15 barrels, presumably, a day. The jury found that the defendant did not produce oil upon the property within a reasonable time, and that a reasonable time expired prior to the filing of the suit. Since the evidence is conflicting to some extent as to this issue, the finding of the jury and judgment of the trial court cannot be disturbed as to these facts.

[2, 3] We will discuss briefly appellant's first proposition that the contract was for payment in oil, and not in money, as found by the jury, and that recovery of money could not be had in the absence of allegations that the payment in oil was prevented by default of defendant. It is true that there are no allegations in plaintiff's petition to the effect that defendant's failure to pay the $3,000 and interest out of the oil to be produced on the lease was due to the latter's failure to use due diligence in testing and developing the land. It is true that defendant in his answer does say that he used due diligence in drilling the well sunk on the lease. It is further true that, if one party expressly avers or confesses a material fact omitted by the other side, the omission is cured.

In Townes' Texas Pleading, p. 401, it is said:

"This rule is usually applied in cases in which the objection is made to the introduction of testimony, and in that connection is a very salutary one, as it would be a little difficult to see how a party had been misled by failure of his adversary to plead a matter which he has himself set up, or be surprised by proof offered in support of his own allegation. So, in ruling upon the admission of testimony, the court may well look to the whole record. The same principles apply when the objection is urged for the first time in motion for new trial or arrest of judgment. Quite different questions arise, however, when the party has been vigilant in discovering the defect and prompt to call it to the court's attention by demurrer, and his adversary asks to look to subsequent portions of the pleading containing the demurrer to find allegations with which to patch out his defective averments. There are a few cases, however, extending the rule even this far."

As supporting the text, see Hill v. George, 5 Tex. 87; Andrews v. Hoxie, 5 Tex. 171; Grimes v. Hagood, 19 Tex. 246; G. C. & S. F. Ry. Co. v. Anderson, 76 Tex. 252, 13 S. W. 196.

We think that it should be held, under this contract, and inasmuch as the jury found that the $3,000 was to be paid in oil, that, before the plaintiff would be allowed to recover the $3,000 in money, he would have to allege and prove that oil sufficient to pay said amount could have been produced by the exercise of reasonable diligence on the part of the defendant, and the failure to produce said oil in said amount was due to defendant's lack of diligence; that, by reason of defendant's lack of diligence in developing the lease, he became liable for and in duty bound to pay in money the amount which he had promised to pay in oil.

In Empire Gas & Fuel Co. v. Pendar, 244 S. W. 184–191, by the Galveston Court of Civil Appeals, writ of error dismissed for want of jurisdiction, the court said:

"We are now brought to a consideration of the sixth question: Was the plaintiff entitled to judgment for the $30,000 which defendant had by the terms of the contract agreed to pay in oil 'if oil should be produced from the leased premises' by defendant, upon a showing that defendant had refused and was still refusing to recognize the contract and to explore for the oil on the leased land as it had obligated itself to do?

"This question, we think, should be answered in the affirmative. The undisputed evidence showed that appellant not only failed, but positively refused, to proceed with the performance of its express agreement to drill upon said land and develop the same for oil. The time within which it agreed to drill had expired long prior to the trial of this suit and long prior to the filing of plaintiff's first amended original petition on June 3, 1920.

"The simple question arising out of these undisputed facts is whether a lessee, which has reserved the right to pay a part of the consideration for the execution of the lease in oil to be produced from the premises, and which has expressly agreed to develop said property, can defeat its obligation to pay the amount payable in oil by breaking its agreement to drill and produce oil from the premises.

"The judgment of the trial court is sustainable upon either of two theories, which lead to the same result: (1) That a party who agrees to pay a sum of money in a certain commodity which he is to produce, and who fails to produce such commodity, is bound to pay the amount stipulated in money; and (2) if proof is necessary to show that the commodity could have been produced, the burden is upon the party breaking its agreement to show that, if the agreement had been kept, the commodity would not have been produced.

"In the specific case, appellant agreed to drill upon and develop the leased premises for the production of oil. Its obligation to that effect was not merely implied, but was express and definite. By the execution of the lease it acquired the exclusive right to do the only thing which would absolutely demonstrate whether oil could be produced from the property or not. It therefore, not only assumed the obligation of testing the property, but it rendered it impossible for appellee to do so. The question therefore is, under such circumstances, whether appellant could be heard to say that, if it had complied with the contract, oil would not have been produced in sufficient quantities to discharge its obligation; or, to put it differently, under such circumstances was the burden upon appellee to show that, if appellant had kept its obligation, it would have produced the oil when appellant destroyed the only means by which such proof could have been absolutely made?

"In 13 Corpus Juris, pp. 631, 632, it is said: 'A contract or promise to pay may be restricted to a particular fund so as to make the raising of the fund or the sufficiency of the fund a condition precedent to the liability, and in such case the promise cannot be enforced, unless the failure to raise or collect the fund from which payment is made is due to the neglect or to the unreasonable refusal to act of the promisor, or is otherwise attributable to him.'

"In 6 Ruling Case Law, in section 325, it is said: 'One who prevents or makes impossible the performance or happening of a condition precedent upon which its liability, by the terms of a condition, is made to depend, cannot avail himself of its nonperformance. Likewise, where the promise is to pay out of a fund to be realized in a certain way, there is an implied obligation to use reasonable diligence in performing the act upon which payment is contingent. In default of such diligence, payment becomes due without performance of the condition.' "

[4] It is a rule of law, well established by all of the authorities, that courts have no more power, until their action is called into exercise by pleading, to render judgment in favor of a person, than they have to render judgment against a person until he has been brought within their jurisdiction. See McCamant v. McCamant (Tex. Civ. App.) 187 S. W. 1096; Busch v. Broun (Tex. Civ. App.) 152 S. W. 683–689; Modern Woodmen of America v. Yanowsky (Tex. Civ. App.) 187 S. W. 728, in which it is said: "facts proven,

but not alleged, cannot form the basis of a judgment."

[5] Does the fact that defendant, in his pleading, stated that he had used due diligence in his effort to develop the lease by expending large sums of money on one hole, and had finally succeeded in making a producing well out of this hole, cure the plaintiff's defective pleading?

We are inclined to think that it does not, and for this reason the judgment below will be reversed, and the cause remanded.