PHOENIX OIL COMPANY, a corporation of the State of Delaware, defendant below, plaintiff in error, *v.* MACKENZIE OIL COMPANY, a corporation of the State of Delaware, plaintiff below, defendant in error.

(*December* 22, 1930.)

WOLCOTT, Chancellor, PENNEWILL, C. J., RICHARDS and ROD-NEY, J. J., sitting.

*Marvel, Morford* and *Ward,* and *Thorp, Bostwick, Stewart* and *Reed,* for plaintiff in error.

*Robert H. Richards* and *Aaron Finger* for defendant in error.

Supreme Court, No. 5, January Term, 1930.

PENNEWILL, C. J., delivering the opinion of the court:

This case is before the court on writ of error to the Superior Court in and for New Castle County wherein the award of the Referee, appointed to determine the issues of fact and law in the case, was affirmed.

The suit was brought to recover on certain promissory notes given in part payment for an oil property sold by the plaintiff to one N. F. Clark. A contract was executed by the plaintiff and Clark wherein the price for the property was agreed to be $400,000 of which $200,000 was to be paid in cash and notes, and the remaining $200,000 was to be paid out of oil produced from the property. Under the contract the vendee was bound to develop the lease and prosecute with diligence the drilling of certain wells, and properly maintain the same until the vendor was paid the amount agreed upon. The cash payment provided for was made, and the notes were given as per agreement. The notes contained thereon the written guaranty of the defendant and the suit is against it as guarantor. The lease contract was formally assigned by Clark, the vendee, to the defendant on June 20, 1921. Of the amount of the consideration for the lease provided to be paid in cash and notes, $100,000 was paid, leaving a balance of $100,000 unpaid and represented by the notes in suit. It was to recover this sum, with interest, costs and attorney's fee, that the suit was brought. Of the $200,000 payable in oil, there has been paid $31,515.60, leaving a balance due on

the purchase price of the property of $168,420.40, in addition to the amount due on the notes.

On December 12, 1921, an extension agreement was entered into by the parties whereby the time for the payment of the notes was extended. It was a considerable time thereafter when the suit was brought to recover on the notes.

The Referee found, as a fact, that the value of the lease was not $400,000, the contract price, but $250,000, and because of the deceit or misrepresentation of the value of the lease by the plaintiff, and particularly of the producing capacity of Well No. 1, the defendant had sustained damages in the amount of $150,000, the difference between the contract price for the property and its real value. These damages, allowed under the counterclaim, the Referee held could not be deducted from the notes because the amount, due from the defendant to the plaintiff, because of its failure to perform its contract, was greater than the $150,000.

The affirmance of the report of the Referee by the lower court was, in the main, on the same grounds. This will appear from a reading of an analysis of that report and the court's opinion immediately preceding the report of this case.

In view of the fact that the material parts of the report of the Referee and the opinion of the lower court will be reported together there is no reason for stating at considerable length the facts in the case and the contentions of counsel, which are fully and clearly stated in the opinion of the lower court.

Neither will we undertake to state specifically, the numerous exceptions filed in this court to the judgment below, because they sufficiently appear in the course of this opinion, as well as in the opinion of the lower court. And, in order to avoid, as far as possible, needless repetition and prolixity, we will not recite the many authorities deemed by counsel pertinent to the case, most of which are referred to, and many discussed in the opinion below.

The court below correctly stated that a defrauded vendee had, as a general rule, any one of three remedies:

1. He may repudiate and rescind the contract, return the property bought and sue for the recovery of any part of the consideration paid by him.

2. He may affirm the contract, elect to keep the property bought, and to otherwise abide by its provisions, but bring an action for deceit for the recovery of the damages suffered by him by reason of the false representations of the seller.

3. He may affirm the contract, but instead of suing the vendor for the damages suffered by him, he may wait for the vendor to bring suit against him for his failure to perform his obligations under the contract, and by way of recoupment set up the damages suffered by him by reason of the fraudulent misrepresentations of the seller.

The defendant chose and pursued the last-mentioned remedy, and filed a plea of recoupment.

All of the legal questions raised in this case, and elaborately discussed by counsel here and below, were so fully considered, and, in our opinion, correctly decided by the lower court, that there is no reason for an extended opinion in this court, or perhaps, for any opinion other than a judgment of affirmance.

But, because some of the questions involved are very important, were argued at great length, and with much zeal and apparent confidence on both sides, we think the reasons for our conclusions should be briefly given.

There is one important fact that is not and cannot be disputed, viz.: That the contract involved was made in the State of Texas and is governed by the law of that state. While this is not denied, the defendant does vigorously contend that the law of that state, applicable to a case like the present one, is not correctly stated in the case of *Empire Gas & Fuel Co. v. Pendar* (*Tex. Civ. App.*), 244 *S. W.* 184, 191, and other cases relied on by the plaintiff. But we are not convinced, notwithstanding the able argument made on behalf of the defendant, and the cases cited by it, that the law laid down in the *Pendar* case has been overruled or disregarded in other Texas cases where the facts were practically similar.

We shall not prolong this opinion by quoting at length from decided cases, but because of the importance and pertinency of the Texas Pendar case in this litigation, the similarity of its facts to

those in the present case, and the strength and reasonableness of the court's opinion, we quote at some length from the opinion.

In this case the court said:

"We are now brought to a consideration of the sixth question: Was the plaintiff entitled to judgment for the $30,000 which defendant had by the terms of the contract agreed to pay in oil 'if oil should be produced from the leased premises' by defendant, upon a showing that defendant had refused and was still refusing to recognize the contract and to explore for the oil on the leased land as it had obligated itself to do?

"This question, we think, should be answered in the affirmative. The undisputed evidence showed that appellant not only failed, but positively refused to proceed with the performance of its express agreement to drill upon said land and develop the same for oil. The time within which it agreed to drill had expired long prior to the trial of this suit and long prior to the filing of plaintiff's first amended original petition on June 3, 1920.

"The simple question arising out of these undisputed facts is whether a lessee which has reserved the right to pay a part of the consideration for the execution of the lease in oil to be produced from the premises, and which has expressly agreed to develop said property, can defeat its obligation to pay the amount payable in oil by breaking its agreement to drill and produce oil from the premises.

"The judgment of the trial court is sustainable upon either of two theories, which lead to the same result: (1) That a party who agrees to pay a sum of money in a certain commodity which he is to produce and who fails to produce such commodity, is bound to pay the amount stipulated in money; and (2) if proof is necessary to show that the commodity could have been produced, the burden is upon the party breaking its agreement to show that, if the agreement had been kept, the commodity would not have been produced.

"In the specific case, appellant agreed to drill upon and develop the leased premises for the production of oil. Its obligation to that effect was not merely implied, but was express and definite. By the execution of the lease it acquired the exclusive right to do the only thing which would absolutely demonstrate whether oil could be produced from the property or not. It therefore not only assumed the obligation of testing the property, but it rendered it impossible for appellee to do so. The question therefore is, under such circumstances, whether appellant could be heard to say that if it had complied with the contract, oil would not have been produced in sufficient quantities to discharge its obligation; or, to put it differently, under such circumstances was the burden upon appellee to show that if appellant had kept its obligation, it would have produced the oil when appellant destroyed the only means by which such proof could have been absolutely made?"

In the Pendar case there was the sale of an oil lease. The price was $60,000, of which half was payable in cash and notes and the remaining half in oil to be produced from the leased premises by lessee if the same is so produced. The purchaser failed to develop the property, and in the court below the vendor recovered a judgment for the $30,000 which was payable in oil.

The decision in that case is supported by other cases as well as text writers.

In 6 *Ruling Case Law,* § 325, it is said:

"Likewise where the promise is to pay out of a fund to be realized in a certain way, there is an implied obligation to use reasonable diligence in performing the act upon which payment is contingent. In default of such diligence, payment becomes due without performance of the condition."

See, also, 13 *Corpus Juris,* 631, 632.

In *Honaker v. Guffey Petroleum Co.,* decided in 1927, in the Court of Civil Appeals in *Texas,* 294 *S. W.* 259, 264, the court said:

"In the absence of a fixed time for payment, this additional consideration became due in a reasonable time. [Citing cases.] Its refusal to pay in oil after a reasonable time had elapsed entitled appellants to collect in money such part of the consideration as they would have received in oil. (Citing *Pendar* case.)"

In the *Honaker* case part of the consideration for the lease was payable in oil, and the purchaser failed to develop the property.

In *Leonard v. Prater* (Tex. Civ. App. decided May 9, 1929), 18 *S. W.* (2d) 681, at page 685 of the report, the court said:

"The extension agreement provided for payment of $5,000 out of the first oil or gas produced. Appellants obligated themselves to use reasonable diligence to develop the 200 acres within a reasonable time so that appellees would receive the $5,000 compensation, and we therefore conclude, under the evidence detailed, that their failure to develop the lease as agreed entitled appellees to collect as damages the $5,000 stipulated. The following authorities support our conclusion: *Empire Gas & Fuel Co. v. Pender (Tex. Civ. App.),* 244 *S. W.* 184; *Moore v. Jones (Tex. Civ. App.),* 278 *S. W.* 326; *Honaker v. Guffey Petroleum Co. (Tex. Civ. App.),* 294 *S. W.* 259; 6 *R. C. L.* 945, 946; 13 *C. J.* 631."

We are satisfied that the *Pendar* case states the law of Texas applicable to a case like the one before this court, and as before said, that law must control.

We have carefully examined the four cases relied on by the defendant as overruling the *Pendar* case, and find that for the most part they approve rather than overrule. The *Honaker-Guffey* case is one, and *Harris v. Wheeler (Tex. Com. App.),* 267 *S. W.* 465, another. The last-mentioned case is the only one of the four decided by a higher court than the one that decided the *Pendar* case, and it not only does not overrule that case, but is in no sense in conflict with it. Certainly it does not disapprove the principle therein

declared because on a motion for a rehearing in the Court of Civil Appeals, 255 *S. W.* 206, 211, the court used this language:

"We are of the opinion that this proposition is not sound. The fault with it is in the premise that Langley's obligation to pay did not become absolute on his abandonment of the lease. The provision for payment out of the oil runs was not, under the circumstances, an absolute condition precedent to Langley's liability to pay otherwise. It fixed the time and provided the means of payment, but when Langley, by his abandonment of the lease, made it impossible for him to pay in the way provided by the contract, he then became liable absolutely for the payment."

*United Central Oil Corporation v. Helm* (*C. C. A.*), 11 *F.* (2d) 760, cited by the defendant, when carefully read, is found to approve the principle announced in the *Pendar* case, particularly, that the burden is on the vendee to show that oil out of which part of the consideration is payable, could not be produced from the property.

The same comment may be made on the case of *Moore v. Jones* (*Tex. Civ. App.*), 278 *S. W.* 326, another of the cases cited by the defendant.

As before remarked, this court does not propose to review, or even mention, the many cases cited on this point, or any other, in the voluminous briefs of counsel. It would be a very laborious, unnecessary and unprofitable task, and the court might be more confused than aided in its performance.

In view of the Texas cases, we take the law applicable to the present case to be this:

A person who agrees to pay a part of the consideration for a lease in oil to be produced from the property, and fails to produce and deliver the oil in accordance with his agreement, is bound to pay the amount stipulated in money unless he shows that the oil could not have been produced even if he had used every effort and means he agreed to use.

This is not only the law but it seems to us to be logical and reasonable that the burden should be on the defaulting vendee to show that his agreement could not be carried out.

But all the authorities, we think, agree that the vendee is not bound to pay in money the part of the consideration payable in oil if it is satisfactorily shown that the oil could not be produced from

the lease. The vendee's executory agreement is not, therefore, an absolute one to pay in any event but is conditioned on the productivity of the lease.

It must be a corollary to this rule of law that a defaulting vendee before he is bound to pay in money the part of the consideration payable in oil, shall have an opportunity to show that the oil could not be produced.

The defendant claims that it has not had such opportunity because neither under the pleadings, nor the stipulation entered into before the Referee, broad as it is, was he given notice that the plaintiff would seek to set off against defendant's damages for misrepresentation the damages caused by the defendant's breach of its agreement to properly develop the lease and produce the oil. This is one of the points raised by the defendant in combatting the report of the Referee and the decision of the lower court. There is nothing in the pleadings that gave such notice unless the defendant's plea of recoupment raised the issue. The Referee held that the defendant could not be allowed damages on its counter claim until it had performed its executory agreement to develop the lease relying on *Hines v. Brode*, 168 *Cal.* 507, 143 *P.* 729, 732, and *Hickman v. Johnson*, 36 *Cal. App.* 342, 178 *P.* 145. The lower court said:

"* * * The later cases have squarely repudiated this doctrine. * * * No proof of performance on the part of the vendee was necessary in this case in order to permit the deduction by the defendant of damages suffered by reason of the false representations of the plaintiff." Citing *Paolini v. Sulprizio*, 201 *Cal.* 683, 258 *P.* 380, 381, and *Riegel v. Franzel* (*Sup.*), 191 *N. Y. S.* 126, and other cases.

But the court, also, said:

"Performance or non-performance of the contract does, however, have a material bearing on the question of damages in a case of this character. Whether a purchaser seeks a remedy by action of deceit, or counter claim under a plea of recoupment, having affirmed the contract as we have already seen, he is bound by its provisions and the damages suffered by the seller by reason of the non-performance of the purchaser, if such damages can be ascertained from the evidence (*Paolini v. Sulprizio* [201 *Cal.* 683] 258 *P.* 380) as well as the purchaser's own damages arising from misrepresentations of the seller inducing the sale, must be taken into consideration in reaching a conclusion as to the proper judgment to be entered."

It was held, therefore, that the damages the plaintiff had sustained on account of the defendant's failure to perform his contract

might be deducted from the damages suffered by the defendant because of the plaintiff's misrepresentation of the value of the lease.

But it makes no difference in this case whether the law stated by the Referee or that declared by the lower court is adopted, because the result would be the same. In the one case the defendant could not recoup his damages until he had performed his executory agreement, and in the other the defendant's damage for misrepresentation would be diminished to the extent of the plaintiff's damage caused by defendant's failure to perform its contract.

The lower court further held that, under the Texas law the defendant's neglect or refusal to take the necessary steps to produce the oil make it liable to the plaintiff for the sum agreed upon, and that the plea of recoupment squarely raised that issue.

The defendant denies that the plea of recoupment raised such issue and says the question of damages suffered by plaintiff because of defendant's failure to develop the lease was not litigated in the case and no opportunity was given to offer evidence thereon.

While the plea of recoupment may not have directly put in issue the question of plaintiff's damages suffered because of defendant's breach of contract, it meant that the defendant would claim damages for the plaintiff's deceit or misrepresentation. That being so, the defendant must be presumed to have known that damages claimed under its plea of recoupment would not be awarded so long as the defendant was indebted to the plaintiff in a larger sum under the lease contract, payable in oil, and which it had failed to pay. The defendant, therefore, had every reason to believe when the plea of recoupment was filed, that plaintiff's damages for defendant's breach of contract to pay a certain part of the consideration for the lease in oil would be claimed as a set-off against defendant's damages, and the defendant should have been prepared to meet such issue.

The defendant insists that, if the $150,000 damages allowed on its counter claim could not be deducted entirely from the part of the consideration payable in notes it should have been applied equally in reduction of the amount payable in notes and in oil. Was the Referee warranted in the application he made of defend-

ant's damages? In view of the law applicable to such a situation, we think he was.

It is clear from the authorities that the defendant could not be allowed damages for the plaintiff's misrepresentation of the value of the lease until the defendant had performed its executory agreement or showed that it could not be performed. It did neither, but in filing its plea of recoupment, and claiming damages thereunder for plaintiff's deceit, it affirmed the contract, assented to be bound by its provisions, and admitted its liability for whatever was due thereunder. That part of the consideration for the lease which, under the contract, was payable in cash and notes had been performed by the defendant; the cash had been paid and the notes given, but that part payable in oil had not been performed except to a small extent. That being the case, the part of the consideration that was payable in oil, the unperformed part of the agreement, could not be disregarded in determining what damages the defendant should receive for the deceit that induced the contract.

The leading case on this subject seems to be *Hines v. Brode, supra,* in which the court said:

"Where, under an executory contract, a plaintiff seeks recoupment in damages for deceit while affirming the contract (and it must necessarily be an affirmance if the action be not after rescission) it must be conclusively taken as to such plaintiff that he stands ready and willing to pay the full consideration called for by the contract, and that the damages which he is entitled to recover are no other and no greater than those which would be awarded to a plaintiff who had fully executed his contract. Therefore, in case of an executory contract, from the award which the jury may make because of the fraud must be deducted the unpaid part of the purchase price or the value of any other consideration."

Other cases to the same effect are: *Hullinger v. Big Sespe Oil Co.,* 50 *Cal. App.* 6, 194 *P.* 742, 743; *Paolini v. Sulprizio, supra; Riegel v. Franzel (Sup.),* 191 *N. Y. S.* 126; *Hickman v. Johnson, supra.* Additional cases might be cited in which the same principle is recognized.

In the *Paolini* case the court used this language:

"From any award which may be made because of the fraud must be deducted any unpaid part of the purchase price. * * * But in any event the party guilty of the deceit is entitled to have the damages mitigated to the extent of the nonperformance of the other party to the contract."

It will be noted that the part of the contract that was unperformed by the defendant was that part which provided for the payment of a certain sum in oil.

The Referee had the right and duty, we think, to deduct from the $150,000, the damages sustained by the defendant, the part of the consideration for the lease that was payable by the defendant in oil and not paid, it being the unperformed part of defendant's contract, and the damages the plaintiff sustained because of defendant's failure to perform the contract.

As was tersely said by the court in the *Paolini* case: ·

" * * * The party guilty of the deceit is entitled to have the damages mitigated to the extent of the nonperformance of the other party to the contract."

The record discloses that after applying the $150,000 allowed on defendant's counter claim in reduction of the sum that was payable to the plaintiff in oil, there remained a balance of $50,000 payable in oil, and the plaintiff insisted that this sum should be made a part of the judgment given in its favor. It was argued that by reason of the stipulation between the parties any sum due the plaintiff from the defendant by way of damages for breach of its contract, in excess of the $150,000 suffered by the defendant, should be added to the amount due on the notes and compose a part of the judgment to be entered thereon. But both the Referee and court held that neither under the pleadings, nor under the stipulation could this claim be allowed.

It was held, therefore, that such damages, suffered by the plaintiff, because of defendant's failure to produce the oil according to its agreement, could not be awarded the plaintiff and form a part of the money judgment given in its favor on the notes.

The court said in this connection:

"The plaintiff company contends that by reason of the stipulation entered into by counsel, any sum due it from Clark by way of damages for the breach of his contract, in excess of the $150,000 damages suffered by him, should be added to the amount due on the notes and compose a part of the judgment to be entered thereon; but we are unable to agree with this contention. The declaration is based on the notes guaranteed by the defendant, and not on the contract of sale."

We think we have covered all the points in the case that might be regarded as debatable and upon which the defendant relied. There are other questions raised in its brief, and discussed to some extent at the argument, but we cannot believe with much confidence.

We will, however, notice some of them.

As already said, the Referee found as a fact that the value of the lease, if the same has been as represented by the plaintiff, with a production of 200 barrels, would have been $400,-000, the contract price, but that in the condition in which it was delivered it was worth only $250,000. The amount of defendant's damages, therefore, for deceit or misrepresentation was $150,000. The defendant claims that the rule employed by the Referee in ascertaining such damages was not the proper rule in view of the Texas statute (*Rev. St. Tex.* 1925, *art.* 4004) quoted in defendant's brief and referred to by the Referee and lower court. But it is clear that the result would have been the same even if that statute had been followed; the defendant, therefore, has no reason to complain.

Moreover, defendant seems to think that the Referee should have determined the actual value of the property in terms of half cash and half oil.

It is difficult to understand this thought. The only way the value of the property could be determined was on a money basis. On this point the lower court said:

"Where the value of property has been misrepresented, and in reliance on such representation a purchase has been induced, the damages suffered by the purchaser are ascertained by deducting the real value of such property from the amount which the purchaser by reason of the misrepresentations of the seller was induced to pay or agreed to pay."

It was on this basis that the Referee found the value of the property and we think it was a proper one.

Another objection made by the defendant to the Referee's determination of the value of the lease, is that there is no evidence in the record to support his finding that the production of the property was 140 to 145 barrels per day. It was upon that finding that the Referee based his opinion respecting the value of

the lease, and we are satisfied that there was not only some evidence, but sufficient evidence to warrant the finding. That being so, the court are bound by the Referee's determination of this fact.

Another contention made by the defendant is, that there was no evidence which showed that its contract respecting the development of the lease had been breached and particularly the part relating to the drilling of wells 3 and 4. It is true the evidence is very meager on this point, but there is some evidence which was brought out, perhaps, in proving the value of the lease. But of more importance than this is the fact that the defendant concedes in its brief, and the case was argued mainly on this assumption, that these wells were not drilled.

On page 12 of defendant's brief we find the following:

"Certainly if the best practice in the vicinity demonstrated that no oil could be produced by the drilling of further wells there was no obligation on the part of Clark to spend $100,000 or more in drilling two additional wells. The Court should bear in mind that Clark drilled two wells * * * and whether there was any obligation to continue with the drilling at the time this suit was brought in 1923 is a matter for further testimony."

In another part of its brief, the defendant says

"the evidence shows that it would have been futile to drill any more wells in the field in which the property was situated."

These excerpts clearly show that the defendant had breached its contract by failing to drill the wells and develop the lease according to its agreement; but the evidence does not show that it would have been futile to drill the additional wells. The futility of drilling other wells is an assumption that may be true, but the fact was not established by evidence, although it was a vital one in defendant's case. Neither did the Referee find as a fact that it would have been futile to drill wells 3 and 4, which the defendant agreed to drill.

It may be further noted that the first Referee found, and stated in his report, the following:

" * * * The defendant has not, and does not seek to rescind the transaction, is still holding and retaining possession of the property, and as far as the testimony goes, has utterly failed to comply with the covenants on its part contained in the agreement of December 21, 1920, in relation to the development of the lease for oil and particularly the drilling of wells Nos. 2, 3, and 4 on said lease."

There are other facts and admissions in the case which tend to show that defendant had breached its agreement to develop the lease, but the statements we have made in that regard sufficiently show that there is no reason or basis for defendant's contention.

The defendant says in its brief,

"it did not execute the guarantee on the notes nor admit that Clark had authority to execute one for it."

The contract provided that the notes to be given for part of the consideration for the lease were to be guaranteed by Omar Oil & Gas Company (now Phoenix Oil Company), the defendant. The guarantee of the notes by the defendant and the authority of Clark to bind the defendant as guarantor, was alleged in plaintiff's statement of claim and admitted in defendant's answer. Moreover, the Referee found as a fact that the defendant was liable on the notes, and, in our opinion, the evidence clearly warranted the finding. Another significant fact in this connection is that some time after the notes were given, bearing thereon the guarantee of the defendant, an extension of time for the payment of the notes, so guaranteed, was asked for by the defendant. We do not think, under the undisputed facts in the case and the admissions of defendant, that the question of guarantee of the notes was an issue in the case.

A further contention of the defendant is, that because the notes in suit provided for the payment of interest on unpaid interest, they are in violation of the Texas statute on the subject and, therefore, usurious.

This point was made in defendant's main brief, but it is not mentioned in its reply brief which contains a general summary of the exceptions relied on and we, therefore, conclude that it was abandoned. Nevertheless, because the question was argued on both sides the court will briefly consider it.

Each of the notes provided for interest at the rate of seven and a half per cent. per annum until maturity, and thereafter at the rate of ten per cent. per annum, together with interest at ten per cent. per annum on all past due interest. The former Referee, as well as the last one, held that the law of Texas (*Rev. St. Tex.* 1925, *art.* 5071), which was the place of making and payment, applied

as to the interest payable under the terms of the notes, and that the interest therein provided was legal and valid. But it is claimed by the defendant that the authority under which such decision was based has no application because it was decided before the Texas Statute that does apply was passed. An examination of the cases will show that the Texas courts have sustained interest provisions like those in the notes in question since 1892 when the statute was passed.

We will quote briefly from the case of *Crider v. San Antonio,* 89 *Tex.* 597, 35 *S. W.* 1047, 1048, decided in 1896, in which the Supreme Court of Texas said:

"We are of the opinion that there was no usury in the transaction. Neither our constitution nor our statutes contain any inhibition against compound interest, merely as such. * * * But it is generally held that, even when the debt bears the highest interest allowed by law, a stipulation that in case it be not paid at maturity the interest, as well as the principal, shall bear interest at the same rate, is not usurious."

Upon the authority of this case, and others cited therein, we are of the opinion that the interest provided in the notes involved in the present case was not illegal.

The plaintiff has argued in its brief that the defendant, as assignee of the lease contract, became liable for the performance of Clark's obligations thereunder, but this point does not seem to be seriously controverted by the defendant. We will do no more, therefore, than mention some of the cases cited by the plaintiff in support of its position:

*Greenwood & Tyrrell v. Helm (Tex. Civ. App.* 1924), 264 *S. W.* 221; *Pierce Fordyce Oil Ass'n v. Woodrum (Tex. Civ. App.* 1916), 188 *S. W.* 245; *Cox, et al., v. Sinclair Gulf Oil Co. (Tex. Civ. App.* 1927), 300 *S. W.* 116; *Washington Natural Gas Co. v. Johnson,* 123 *Pa.* 576, 16 *A.* 799, 10 *Am. St. Rep.* 553; *Stoddard v. Illinois Imp. Co.,* 275 *Ill.* 199, 113 *N. E.* 913.

In conclusion, we wish to say that the pending case has, in some of its aspects, been before the courts of this state for several years and we think that no case has received more careful and serious attention at every stage. After giving the written and oral arguments of counsel due consideration, the court has reached the

conclusion that there is no reversible error in the opinion of the lower court, and its judgment affirming the award of the Referee will, therefore, be affirmed.

### On Motion for Re-Argument.

The plaintiff in error has moved for a re-argument of the above case on two grounds:

1. That interest should have been allowed the defendant below on the $150,000 awarded as damages for plaintiff's fraud.

2. That the question of the presumption or burden of proof as to the existence of oil in the property in sufficient quantities to produce $200,000 in cash was improperly decided by the court.

With respect to the second ground, we say:

The question raised was fully considered in the court's opinion, and we can see no reason for a re-argument. The Court have, however, examined defendant's briefs on this point and find nothing in them that was not covered by former briefs.

The first ground urged for a re-argument was not considered by the Court in its opinion because it was not passed upon by the lower court or by the Referee. It does not seem to be covered by defendant's assignments of error, but the question of allowance of interest on defendant's damages has been argued by both sides in the briefs submitted on the pending motion, and the Court will express an opinion thereon. Our conclusion is, that the defendant is not entitled to the interest claimed because the $150,000 allowed as damages, and upon which interest is sought to be recovered, was never paid by the defendant.

We have not seen any authority which supports the contention, that interest may be allowed a vendee in a case like the present one on damages awarded under a plea of recoupment for the fraud of the vendor.

In the cases cited the vendee, having paid the consideration under the contract in respect of which fraud was alleged, brought suit for damages for the vendor's deceit. These cases are essentially different from the present one where the money on which interest is claimed had not been paid. In the cases relied on it was held

that the measure of damages in an action for deceit in the sale of property is the difference between the real value of the property at the date of the sale, and the price paid, with interest thereon. *Sigafus v. Porter,* 179 *U. S.* 116, 21 *S. Ct.* 34, 45 *L. Ed.* 113; *Smith v. Bolles,* 132 *U. S.* 125, 10 *S. Ct.* 39, 40, 33 *L. Ed.* 279. In the last-mentioned case the court said:

"He [fraudulent vendor] was bound to make good the loss sustained,—such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct."

This language is quoted with approval by the court in *George v. Hesse,* 100 *Tex.* 44, 93 *S. W.* 107, 8 *L. R. A.* (*N. S.*) 804, 123 *Am. St. Rep.* 772, 15 *Ann. Cas.* 456, which was also cited by the defendant.

The motion for re-argument is, therefore, refused.

Note.—The proceedings in the lower court immediately precede the report of this case.

A bill to restrain the collection of the judgment entered in this case was filed in the Federal Court for the District of Delaware (No. 856, in Equity, decided March 10, 1932, 56 F. [2nd] 1070), but the bill was dismissed by the Court.