TAYLOR IRON AND STEEL COMPANY, complainant-respondent,

*v.*

WESLEY G. NICHOLS et al., defendants-appellants.

[Argued December 9th, 1907.   Decided March 13th, 1908.]

1. A contract in restraint of trade will not be enforced unless the restraint is no more extensive than is reasonably required to protect the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public.

2. A contract for personal services which forbids the employe to divulge any information known to him or acquired by him during his employment relating to the process of manufacture, and to hold inviolate the treatment,

processes and secrets known to or used by him in the works of the employer, which is unlimited as to time and place, will not be enforced.

3. Where the bill avers and the answer denies that the complainant has secret processes, and the secrecy of the process is an issue in the cause, it is erroneous to exclude evidence as to the details of the alleged secret processes.

4. In order to protect the complainant from an unnecessary disclosure of a secret process, the evidence may be taken in camera and sealed.

5. An agreement by an employe to serve for five years and during that time to devote his entire time, skill, labor and attention to the service of the employer, though valid, is not enforceable under the circumstances of this case, even if the court of chancery will ever enforce by injunction a contract for ordinary personal services.

On appeal from a ·decree of the court of chancery, advised by Vice-Chancellor Bergen, whose opinion is reported in *70 N. J. Eq. (4 Robb.) 541.*

Mr. John R. Hardin, for the respondents (*Mr. Richard V. Lindabury,* on the brief).

Mr. Gilbert Collins, for the appellants (*Mr. Charles L. Corbin,* on the brief).

The opinion of the court was delivered by

SWAYZE, J.

The bill seeks to enjoin Nichols from divulging to anyone other than the complainant any information known to him at the time of the agreement hereafter to be mentioned, or acquired by him during the term of the agreement relating to the making of steel, that may have been used in the complainant's works, and from divulging treatments, processes and secrets known to or used by him in the complainant's works, and from devoting during the term of said agreement any part of his time, skill, labor and attention to the service of anyone except the complainant. It also seeks to enjoin the other defendant from employing Nichols or using any information acquired from him relating to the process of steel making that may have been used in the complainant's works.

The complainant has been engaged since 1891 in making steel under what is known as the Hadfield process and patents. Hadfield, in 1891, had licensed Howe and others to use his processes, and they had agreed to keep the same secret until January 1st, 1902. Subsequently the complainant succeeded to the rights of the licensees. In 1892 Hadfield granted another license to the complainant covering projectiles, and they agreed to keep the process secret until December 31st, 1903. Afterwards, in 1901, the agreement for secrecy was extended to July 1st, 1908. Meantime on March 16th, 1896, the complainant had employed the defendant, and he had agreed in writing that he would not, before January 1st, 1902, make known to any person any information which he should receive at the complainant's works. Nichols continued in plaintiff's employ from 1896 to July, 1905. On March 15th, 1905, he entered into a new agreement, in writing, for the term of five years from March 1st, 1905. It is this agreement which the complainant's bill seeks to enforce. The important paragraph reads as follows:

"(2.) The said Wesley G. Nichols agrees that he will devote his entire time, skill, labor and attention during the term of this agreement to the service of the Taylor Iron and Steel Company, and that he will at all times faithfully perform the duties that may be assigned to him by the management of the said Taylor Iron and Steel Company to the best of his skill and ability for the compensation aforesaid, and that he will not at any time, directly or indirectly, during the term of this agreement or afterwards, divulge to any person, firm or corporation, except to the Taylor Iron and Steel Company and its officers, any information of any nature now known to him, or hereafter acquired by him during the term of this agreement, relating to or regarding any process of steel making or moulding or treating steel that may have been, is now, or may be hereafter during the term of this agreement, used in the works of the Taylor Iron and Steel Company, and that he will at all times hold inviolate the treatments, processes and secrets known to or used by him in the works of the said Taylor Iron and Steel Company."

The validity of this agreement is assailed by the defendant on several grounds. We think it is necessary to consider only the objection that it is invalid because it constitutes an excessive restraint of trade.

The rule of this state is that a contract in restraint of trade will not be enforced unless the restraint is no more extensive

than is reasonably required to protect the interests of the party in favor of whom it is given, and not so large as to interfere with the interests of the public.

*Mandeville* v. *Harman, 42 N. J. Eq. (15 Stew.) 185; Sternberg* v. *O'Brien, 48 N. J. Eq. (3 Dick.) 370,* both of which were cited with approval by this court in *Trenton Potteries Co.* v. *Oliphant, 58 N. J. Eq. (13 Dick.) 507.* Where the contract relates to personal services of a special, unique or extra-ordinary character which can be performed by no one else and there is a negative covenant, the court sometimes enforces the negative covenant by injunction, as in *Lumley* v. *Wagner, 1 DeG. M. & G. 604.* But the jurisdiction of equity rests upon the inadequacy of the legal remedy (*Pom. Eq. Jur.* § *1344*), and the courts of other jurisdictions, as well as our own courts in the cases cited, have shown a reluctance to extend the jurisdiction. *Whitwood Chemical Co.* v. *Hardman, 2 Ch. 416 (1891);* *60 L. J. Ch. 428; Rice* v. *D'Arville, 162 Mass. 559.* The present case does not even show that Nichols' services were of so special, unique or extraordinary character that an injunction should issue.

The contract not only forbids Nichols to disclose any secret of the complainant, but also any knowledge he might have relating to the process of making steel that may have been used in the complainant's works, whether matter of common knowledge or not, whether known to him before he entered their employment or not; and it also requires him to hold inviolate, not only the secrets of the complainant, but his own secrets, if he had any, and treatments or processes, whether secret or not. The necessary result of the enforcement of the contract would be that Nichols must either work for the complainant or remain idle; and since the restraint is unlimited in point of time or place, he might, at the option of the complainant after the expiration of five years, be without employment for the rest of his life at the only trade he knows. Such a restraint savors of servitude, unrelieved by an obligation of support on the part of the master. The courts have refused to enforce similar contracts. *Alger* v. *Thacher, 19 Pick. 51; Albright* v. *Teas, 37 N. J. Eq. (10 Stew.) 171.*

The learned vice-chancellor perceived the difficulty we have mentioned, but held that the agreement was limited to processes in use by the complainant which were not known to Nichols until they were disclosed to him by the complainant. If we were able to adopt this restricted meaning, we should still think the covenant an unreasonable restraint. Some of the secret processes were those known as the Hadfield processes, which had been communicated to the defendant under the contract of 1896. That contract bound him to secrecy only until January 1st, 1902, the same time fixed by Hadfield's original license to Howe. By necessary inference, after that time he was no longer bound. *"Expressio unius exclusio alterius."* On the vice-chancellor's construction of the agreement of 1905, he bound himself forever not to disclose secrets learned under the contract of 1896. There is nothing to show that circumstances had so changed as to require a perpetual restraint in 1905, when a restraint for six years only had been adequate in 1896, or that reasonable protection of the complainant required a perpetual restraint of the defendant from disclosing what by agreement he had been entitled to disclose for the three years preceding. The complainant itself is restrained only until July 1st, 1908. In our judgment the complainants' case fails, as far as it rests upon the written contract.

The complainants' right does not rest on the contract alone. We have held that a contract for secrecy may be implied from a confidential relation between employe and employer, and the divulging of a secret be enjoined. *Stone* v. *Graselli Chemical Co., 65 N. J. Eq. (20 Dick.) 756.* The circumstances of this case require such a contract to be implied as to all secrets not covered by the special contract of 1896. As to those secrets, that written contract controls. Our difficulty in this respect arises out of the manner in which the case was tried. The bill avers, and the answer denies, that the complainant has secret processes. This was the very issue to be determined. The vice-chancellor, however, refused to admit evidence as to the details of the alleged secret processes, or cross-examination with reference thereto. The decree awards an injunction restraining Nichols from divulging the secret methods and processes used by the

complainant in making manganese steel, taught to or acquired by him while in their employment.

The difficulty which arises in this class of cases is that of affording adequate protection to a secret, if any disclosure of it is required. The court, in a proper case where the details of the secret are known to all the parties and no doubt arises as to its secret character, may well refuse to compel a disclosure. Such a case was *Eastman* v. *Reichenbach, 20 N. Y. Supp. 110.* But in the ordinary case, a disclosure to the court is necessary, and that for two reasons—*first,* that the court may determine the issue of fact, and *second,* that the terms of the injunction may be so specific that the question of a violation may be determined. In the present case, the evidence is convincing that the complainant made a product of peculiar excellence, which had obtained high repute in the market, and quite persuasive that it has special methods of manufacture; but it is impossible to tell, from the evidence, whether the results achieved were due to skill in manipulation acquired by experience, or to some secret process, or whether, if there was a secret process, it was more than the Hadfield process which the defendant Nichols had agreed not to disclose before January, 1902, or different from the process described in the Brinton patent which was taken out after the bill was filed and before the decree. Mr. Brinton himself testified that the process was essentially the Hadfield process with such modifications as the complainant had made. A careful reading of the testimony has not enabled us to determine exactly what the complainant claims as a secret process.

The terms of the injunction are very broad. It restrains the defendant from divulging secret methods and processes, as if there was more than one, as, indeed, there may be, and it contains nothing by which it can be hereafter determined what are the methods and what are the processes, or whether the two are to be distinguished. The difficulty was thus expressed by Lord Eldon in an early case: "The only way by which a specific performance could be effected would be by perpetual injunction, but this would be of no avail, unless a disclosure were made to enable the court to ascertain whether it was or was not infringed; for, if a party comes here to complain of a breach of injunction,

it is incumbent on him first to show that the injunction has. been violated." *Newbery* v. *James, 2 Meriv. 446, 451.*

The difficulty felt by the vice-chancellor is not removed by the procedure he adopted. It is merely postponed to the time when it may become necessary to take proceedings in contempt for violation of the injunction. We think orderly procedure requires that before the defendant is enjoined, he should be definitely informed what it is he is forbidden to do. In no other way could the judge in the court of first instance, or this court on appeal, determine hereafter whether there had been a violation of the injunction, in case of proceedings for contempt. For the protection of the complainant, the usual course is to take the evidence as to the secret in camera, as was done in *Stone* v. *Grasselli Chemical Co.* Everyone may be excluded, except the parties, both of whom must already know the secret, and their counsel, who must have been apprised thereof. When, as in this case, a third person, to whom the secret has not yet been disclosed, is a party, he may well be excluded without injustice. It is not necessary to embody the description of the secret in the injunction itself. The testimony taken in camera may be sealed and used only when it becomes necessary to determine whether there has been a violation. It is true that the procedure involves a risk to the complainant of his secret becoming public; but that difficulty is inherent in the subject. It is a difficulty to which the complainant must submit if he seeks to retain the benefit of his secret for an indefinite time, and is not content with the more effective protection for a shorter period which is offered by our copyright and patent laws.

We have examined the cases cited to the contrary by the complainant, but, with the exception of the *Reichenbach Case,* they fail to sustain the contention, and in that case the opinion shows that the existence of the secret process was not squarely put in issue.

The decree must be reversed to the extent that it enjoins Nichols from divulging or disclosing, directly or indirectly, to any person, firm or corporation, the secret methods and processes used by the complainant, and enjoins the American Brake Shoe and Foundry Company from disclosing or making use of any

information relating to the secret methods and processes communicated to it by Nichols.

This determination does not dispose of the case. By the contract Nichols also agreed that he would devote his entire time, skill, labor and attention during the term of his agreement to the service of the Taylor Iron and Steel Company and to faithfully perform the duties that might be assigned to him. This portion of the agreement is severable from the agreement not to divulge secrets, and is in itself valid. We see no objection to an agreement to serve an employer to the exclusion of all others for a term of five years. A similar agreement has been sustained in the English courts. *William Robinson & Co., Limited,* v. *Heuer,* *2 Ch. 451 (1898).* Assuming that if this portion of the agreement stood alone, we could, upon proper pleadings, sustain that portion of the decree which restrains the American Brake Shoe and Foundry Company from employing Nichols during the term of the agreement, such an injunction would necessarily rest upon the fact that both the obligation and opportunity of service under the agreement were still subsisting. The agreement itself, however, provides that it shall be terminated "by the failure of the said Wesley to faithfully observe and keep the terms and conditions by him to be kept and performed." The complainant, indeed, charges that Nichols' resignation was not accepted, but its whole case rests upon the theory that he had failed to faithfully observe and keep the terms of the agreement. The further provision that no termination of the agreement shall deprive the complainant of any remedy it might have had during the continuation of the agreement, or at any other time, for violation of its terms, is not sufficient to entitle the complainant to this injunction; for such a decree is in effect a decree for specific performance, and the complainant can hardly claim specific performance of a contract by virtue of a clause giving a remedy for breach of its terms, even if we assume that the court of chancery will ever enforce, by injunction, a contract for ordinary personal services. As is said in the brief for the defendant,

"the complainant has the choice to claim damages for breach or to claim performance under the terms of the contract, in which case he must offer to perform on his part. The complainant in the bill does not offer to

continue to employ Nichols, and the decree does not impose on the complainant any terms that such employment shall be offered."

The decree must therefore be reversed, but as this results as to the important question involved, because of the rejection of evidence, the reversal should be without 'prejudice to further proceedings in the court of chancery (*Charlton* v. *Columbia Real Estate Co., 67 N. J. Eq.* (*1 Robb.*) *629*), or to the filing of a new bill, if the complainant prefers that course.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Garrison, Swayze, Reed, Trenchard, Bogert, Vroom, Green, Gray, Dill—10.