The complainant is a corporation of the State of Ohio, doing business therein. The defendant is a corporation of the State of Delaware, authorized to do business in New Jersey, and engaged in the manufacture of steel products in the city of Jersey City. The complainant, according to the bill of complaint, is engaged in the manufacture of paper mill machinery and other castings by means of patent and secret centrifugal processes and apparatus. The bill charges that on or about April 30th, 1926, three of the individual *Page 116 
defendants who had gained a knowledge of the complainant's secret processes in confidence while employed by the complainant, left its employ in conspiracy with the defendant corporation, and in pursuance thereof entered the latter company's employment. That on or about January 29th, 1927, a little more than a month before the filing of the bill, the defendant company enticed the defendant Till into its service from the complainant. It is charged that the purpose of the conspiracy is to cause the individual defendants to disclose the instructions, information and knowledge, so confidentially imparted to them by the complainant, to the defendant company, thus irreparably injuring the complainant. The prayer of the bill is for temporary and perpetual injunctions.
On what practically amounted to a hearing on an order to show cause, a temporary injunction was allowed, but upon terms considered so dangerous by the complainant that it abandoned its right to such a writ. Thereupon, notice of the present motion was given.
The argument of the defendants is, that while the bill of complaint speaks of secret processes developed by the complainant and held secret and confidential by it, there is no word of description as to the secret refinements of the art which the defendants are declared guilty of pirating, and so, they say, that unless further enlightenment is procured they can neither intelligently answer the bill nor prepare their respective defenses because of lack of knowledge of the case they will have to meet.
The complainant, on the other hand, argues with equal earnestness that to commit to written form the information sought by the defendants will practically result in publishing it to the world, and thereby the complainant will be robbed of the fruit of its industry. It proposes as an alternative that it will entrust to the court before final hearing a description of the various processes it wishes to protect, and that before the defendant will be called upon to introduce any proofs it will describe, incamera, the methods that it had developed and such proof of the violations mentioned in the bill as it may then possess. Under these circumstances, the court can control the final hearing and extend to the defendants an *Page 117 
opportunity to then gather such evidence as they may be able to procure to meet the complainants case.
The determination of just what should be done has greatly perplexed me. This is not the routine application such as was frequently found where a plaintiff in a court of law declared upon the common counts in assumpsit. Of course, originally, a bill of particulars was only demandable in actions at law, because of the great particularity in which the complainant was obliged to state the facts upon which he relied. Neither Dan.Ch. Pl. Pr. nor Bart. Eq. even mentions such a thing as a bill of particulars. Any defect in the statement of facts in the bill of complaint could be taken advantage of by demurrer. 31Cyc. 568. So far as I am aware, there was no practice authorizing a bill of particulars prior to the rule of July 4th, 1915. While a bill of particulars should be ordered, under proper circumstances, in an ordinary equity suit, still, it is significant that the forty-fifth rule of this court makes it discretionary, as it is in the courts of law. Reynolds v.Britton, 18 N.J. Law 304. And the main consideration in disposing of the present motion is, whether or not the prayer should be granted in this peculiar form of litigation.
So far as preparing their answer or answers is concerned, I am at a loss to understand why the defendants require any expansion of the statement of facts to be found in the bill. After relating the incorporating of the corporate parties, the third paragraph sets up that the complainant is engaged in the manufacture of certain machinery "by means of patent and secret centrifugal processes and apparatus" and has preserved its drawings, methods,c., in secret and has expended large sums of money in so doing. It seems to me that this paragraph can be sufficiently met by a specific admission, denial, or pleading lack of knowledge by each defendant as to the facts therein stated. The individual defendants certainly know and will not refuse to enlighten their present employer.
The next paragraph alleges the former employment of the individual defendants by the complainant, their previous lack of knowledge of the processes mentioned in the bill, their *Page 118 
tuition at the complainant's hands, and the agreement on the part of such defendants not to divulge. It would appear that the defendants might sufficiently answer by admitting, denying, or explaining each of the matters alleged, and, to the Kellogg company, there might be available the further answer of ignorance.
It is alleged in the fifth paragraph of the bill that the complainant's methods were known to no others and are of great value. Certainly, they were or were not known, and I do not see how any further information is needed to meet these statements, and if the Kellogg company does not know, it may leave complainant to its proof.
The sixth and seventh paragraphs recite the alleged enticement from the complainant, by the defendant company, of the individual defendants from the employment of the former to that of the latter, as the result of a conspiracy inter partes among these various defendants. This is the usual and precise way of charging a corrupt agreement between or among defendants, and, as was said on the argument, anything more would be the pleading of evidence.
The rest of the bill charges the intended betrayal of the complainant's secrets to the defendant corporation and the latter's plan to compete with the complainant. Here, again, these various defendants know whether or not such statements are true or false, and should answer accordingly.
I take it that the main purpose of the defendants on this motion is to secure a more detailed and specific relation of the secret processes, merely mentioned in the third paragraph of the bill. At first glance, and if rules are to be pursued to their logical conclusion, this would seem to be a mere conclusion of the pleader which, it is elementary, has no place in any pleading, legal or equitable. For someone to say that he is engaged in the manufacture of machinery "by means of patent and secret centrifugal processes and apparatus" is similar, when regarded from the standpoint of a literal application of the rule, to an allegation by one seeking a divorce, that he is entitled thereto. Either one is a conclusion which the court is to draw, upon the submission of legal evidence. One of the defenses that may be successfully interposed to a *Page 119 
case like the one at bar, is that the processes claimed were commonly known to the trade or art at the time of the alleged conspiracy. But this is not an ordinary litigation where the parties cheerfully and eagerly disclose all their information to the court in such a way that the whole world may know it, if it cares to take the trouble to find out. Here, a complainant seeks to have enforced valuable rights, but of such peculiar nature that to disclose those rights to the public would rob them of every vestige of value. In the ordinary run of litigations, orderly procedure and the dispatch of business necessitate the imposition of general rules that are rigidly adhered to, except when the result of such adherence will work an injustice, as recited in rule No. 4 of this court. But that a case, such as the one in which this motion is made, is not an ordinary one, is shown, I think, in such cases as Taylor Iron and Steel Co. v.Nichols, 73 N.J. Eq. 684, upon which both parties rely. It is true that Mr. Justice Swayze (at p. 690) referred to the requirements of "orderly procedure;" but that one may never leave the beaten path is sufficiently shown by the fact that ordinary
procedure was abandoned in that case because, following Stone
v. Gresselli Chem. Co., 65 N.J. Eq. 756, this court was directed by the court of errors and appeals to take the testimony as to the process in the manufacture of steel which was there involved, not in open court, as is customarily done, but in secret, where no one but the court, the parties and their counsel, were entitled to be present.
The defendant company bitterly complains that if, after the taking of the complainant's proofs, it is obliged to scour the civilized world to meet them, its business will be imperiled. It says that it is conducting a large business at large expense to the company, necessitating its entering into contracts with great business organizations and even governments, and that if it is left in the dark as to the processes to which it may not resort, it cannot safely undertake any business. Thus, its plant will become disintegrated through meeting heavy standing expenses, and its trade will be destroyed and taken over by its competitors in the intervening months. It seems to me the answer is, that either it is *Page 120 
filching its competitor's property through that competitor's former employes, or it is not. If it is, it is entitled to no sympathy; if it is not, it has nothing to fear and may proceed with its affairs, just as it did before the filing of the bill or the employment of the other defendants. These other defendants are now a part of its personnel, dependent upon the company for their livelihood and advancement. Is it conceivable that it does not know whether or not it is employing methods and refinements that the complainant has spent years of time developing, and confidentially trusted to its former employes, by whom they have been divulged to it? Three of those employes appear to be highly educated technicians, and the fourth a highly skilled workman. Is it possible that from these very intelligent men it will be unable to determine whether or not it is consciously or unintentionally transgressing the bounds of conduct that have been laid down by courts of equity? There has been nothing communicated to me to indicate that the subject of the complainant's processes, if any exists, are so abstruse, intricate and recondite that the keen and trained minds that control and govern the defendant corporation will be unable to determine for themselves where, if at all, they overstep the bound. As litigations go, this company will not be obliged to remain in suspense for very long, because assurance has already been given that the cause will be heard at a short day and expeditiously decided.
I know of no authority from which guidance may be had in a case like this. In the United States district court for this district, entitled The Sandusky Foundry and Machine Co. v. Robert E.Wood, a motion was made for a bill of particulars. Judge Rellstab's order complied with so much of the notice as sought information of the dates and places when and where the defendant was said to have disclosed or not disclosed certain secret processes; but the court did not include the desired direction to the complainant that it describe the secret processes and apparatus. The necessary inference is, that the court did not think the defendant was entitled to compel his adversary to commit to writing information which might very probably render the processes *Page 121 
of limited value. Counsel for the defendants in the case at bar makes the point that the case in hand was one involving only the employer and employe and not a third party, as is the case in the motion to be decided. An examination of a certified copy of the bill of complaint filed in the federal court shows that therewere only the two parties, and that the suit was to restrain any future disclosure by that defendant. I am not able to appreciate, however, the force of this distinction for the reasons already more fully described, namely, the unity, for all practical purposes, of the defendants in the case sub judice. I assume, of course, that the thought intended to be conveyed is, that there would be no necessity for the individual defendants to seek any information as to the nature or description of the processes referred to in the bill, whereas it would be necessary to the Kellogg company. That might be so were it not for the fact that the former employes of the complainant now find their fortunes tied up with their new employer and will refuse it no information that may be necessary to prepare it for its defense. But if by any chance they do not give this enlightenment, or for any other reason any of the defendants finds himself or itself surprised at the final hearing, it will not be fatal because of what has already been said. None of the defendants is under the restriction of any injunctive order, and it is only common fairness that they should be permitted to collaborate in defending the bill. It seems to be that there is a great deal of difference between putting them under the disability of that stringent writ, without even the court knowing what they were forbidden to do, and compelling the complainant to deliver into the hands of its adversaries, in written form, all the information that has been acquired as the result of years of effort and the expenditure of large sums of money.
Upon consideration of all the surrounding facts and circumstances, the motion should be denied. *Page 122