**SPRAGUE ELECTRIC CO. v. CORNELL-DUBILIER ELECTRIC CORPORATION.**

Civ. A. No. 364.

District Court, D. Delaware.

Aug. 7, 1945.

Rehearing Denied Sept. 13, 1945.

See, also, 4 F.R.D. 113.

The present suit is bottomed on several causes of action. An action is alleged under §§ 1 and 2 of the Sherman Act [1] and §§ 4 and 16 of the Clayton Act; [2] another

---

[1] 15 U.S.C.A. §§ 1 and 2.

[2] 15 U.S.C.A. §§ 15 and 26.

action is alleged under the Declaratory Judgment Act.[3] The controversy centers about a suit for unfair competition brought by Cornell-Dubilier against Sprague in the Massachusetts state court. Each of the parties here moves against the other for summary judgment. The facts are taken from the complaint, the affidavits and depositions.

Sprague, a competitor of Cornell-Dubilier, was sued in Massachusetts in May, 1941. The following year Cornell-Dubilier sued three of its other competitors. All the parties manufacture electrical condensers. They are the largest in the industry and their combined production represents more than half of the condensers sold in the United States. The device is an indispensable element of radios, telephones, airplanes, trucks, submarines, tanks, direction finders, etc. Practically all condensers manufactured by the parties are sold to the government. Production demands have sharply increased. Personnel has doubled, but there still remains a labor shortage.

Executive and key operating personnel are required to give their undivided attention to production schedules.

Plaintiff charges that the suits brought by defendant seek to enjoin plaintiff and other competitors of defendant from carrying on their manufacturing operations and to recover heavy damages. These actions, especially the one against plaintiff, require the attention of executives and key production men at a time when their attention is required by war work, with a resultant interference with both production and research, all of which damages the reputation and competitive position of plaintiff. The suit against plaintiff (which is typical of the suits against defendant's other competitors) is based upon alleged breaches of contract by former employees of defendant, who are now in plaintiff's employment and who are alleged to have disclosed numerous trade secrets of defendant to the new employer who has made use of such trade secrets, in violation of an employer-employee contract.[4] Plaintiff hired Brafman after he

---

[3] 28 U.S.C.A. § 400.

[4] Whereas, Harold E. Brafman, residing at 89 Mercer Avenue, North Plainfield, State of New Jersey, is employed by Cornell-Dubilier Electric Corporation, a Delaware corporation, hereinafter termed the Corporation and in the course of his employment has and will become familiar with various processes, products and apparatus used by or manufactured by or under development by the Corporation, and it is probable that he will make inventions and improvements in such lines in which inventions and improvements the Corporation desires all right, title and interest:

Therefore, in consideration of $1.00, the receipt of which is hereby acknowledged, and in consideration of the knowledge of the art which he will acquire by reason of his employment by the said Corporation and of other good and valuable considerations moving from the Corporation to him:

1. He agrees to assign and does hereby assign to said Corporation, its successors or assigns, all right, title and interest in and to any and all inventions, improvements or discoveries he may have made or suggested since he entered the employ of the Corporation whether or not made during the ordinary course of his employment.

He agrees that the inventions, improvements or discoveries referred to in the above paragraph include all inventions, improvements or discoveries which the Corporation shall deem to be useful or to become useful to the business of the Corpo-

ration and whether such invention, improvement or discovery was made as a result of direct assignment to make such invention or otherwise.

He further agrees that when requested by the Corporation and at its expense either during his employment or at any time thereafter to execute United States and foreign applications for any and all such inventions, improvements and/or discoveries which were made within the period of time above stated, these inventions to be and remain the property of the Corporation or its assignees, whether patented or not and that he will without further compensation other than such, if any, as the Corporation may see fit to make voluntarily and in its own arbitrary discretion, execute individual assignments thereof to the Corporation and also execute any further papers it may deem necessary to effectuate the purposes of this agreement and will cooperate with the Corporation to secure to it patent protection on all such inventions, improvements and discoveries, such cooperation to include the prompt disclosure of all the facts, the production of all papers relating to such inventions and improvements and the performance of all acts necessary to complete such inventions, improvements and discoveries and the willingness to testify in interference or other proceedings to the facts of and surrounding the making of such inventions, improvements and discoveries.

2. He further agrees that he will not at any time during said employment disclose

left defendant's employ. This is the basis of the Massachusetts suit by defendant against plaintiff.

Plaintiff charges that the employer-employee contracts used by defendant are in restraint of trade and therefore illegal; and the attempt to enforce them is a violation of the antitrust laws.

The relief sought here on account of the alleged groundless action brought in Massachusetts is for a money judgment for treble damages and an injunction restraining the action in the state court, or, for declaratory judgment relief that defendant has no cause of action against plaintiff in Massachusetts and for an injunction against further prosecution of the Massachusetts action.

Arthur G. Connolly, of Wilmington, Del., for plaintiff.

Caleb R. Layton, III (of Hastings, Stockly & Layton), of Wilmington, Del., and Thomas F. Daly and Helen H. Robinson (of Lord, Day & Lord), both of New York City, for defendant.

LEAHY, District Judge.

It is best to give each party's version of the story:

1. Defendant's. Before January, 1941, Brafman was employed by defendant as a foreman in its mica transmitting condenser department, where he learned many of the defendant's formulae, secret processes and methods of manufacture of these condensers. At a time when plaintiff was not manufacturing these devices, he told defendant's officers that plaintiff had offered him, at a considerable increase in salary, employment if he would take charge of the new condenser department which plaintiff intended to set up. Defendant then raised Brafman's salary twice; but on January 27, 1941 he entered the employ of the plaintiff. Defendant, having reason to believe that Brafman had made disclosure to plaintiff of defendant's trade secrets, on May 29, 1941 commenced its action in the Superior Court of Berkshire County, Massachusetts, against both plaintiff and Brafman for damages and for an injunction restraining plaintiff from using any of the trade secrets. Defendant claims that it was compelled to take this action not alone against plaintiff in Massachusetts, but also against three other manufacturers of condensers who had hired persons who were formerly employees of defendant. According to defendant, in each of these situations the circumstances indicated that its former employees, so hired, were chosen for their knowledge of defendant's trade secrets. The other suits are: Defendant v. Micamold Radio Corporation and six individuals in the Supreme Court of the state of New York, County of Kings; Defendant v. Solar Manufacturing Corporation and one Greenberg in the New Jersey Court of Chancery; and Defendant v. Aerobox Corporation and one Gardner in the Superior Court of Bristol County, Massachusetts.

2. Plaintiff's. Four years have elapsed since the institution of the Massachusetts suit. 70 days have been devoted to the examination of defendant's witnesses before a Special Master. Defendant's prima facie case has not been completed. Plaintiff claims that several years may well elapse before any decision is finally rendered in the Massachusetts action. Plaintiff claims that defendant has indulged throughout in dilatory practices. This manner of prosecuting the suit against plaintiff, plaintiff charges, plus the highly speculative grounds supporting that suit, and the fact that three other similar suits against other large competitors have been filed, supports the conclusion that defendant's real purpose in instituting the Massachusetts action was not to protect its trade secrets but rather to intimidate its former employees and competitors in order to restrain trade and attempt to create a monopoly in the industry.

### Declaratory Judgment Relief

 It is the present view that the Declaratory Judgment Act furnishes an additional remedy which may not be withheld because of the pendency of another suit.

to anyone any information that he may acquire during said employment relating to any of the processes, formulae, plans, circuits, devices or methods, developed, acquired, manufactured or practiced at any time by said Corporation in its business, and he will not use any of said processes, formulae, plans, circuits, devices or methods or his knowledge of the same except in the course of his employment by the Corporation.

3. He hereby covenants and agrees that he has not executed and will not execute any agreement in conflict herewith.

In Witness Whereof he has hereunto set his hand and seal this day of November 3, 1939.

Harold E. Brafman.

Dominion Elec. Mfg. Co. v. Weigand Co., 6 Cir., 126 F.2d 172; Employers' Liability Assur. Corp. v. Ryan, 6 Cir., 109 F.2d 690; and Rule 57 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Although the parties may be before the Massachusetts court on certain issues, jurisdiction has likewise attached here because there can be no denial but that the parties are in an actual controversy and there are issues present here which are not present in the Massachusetts suit. The single question under this branch of the case, however, is what form that relief should take.

For 15 years or more each of defendant's employees has been compelled to sign the uniform type of agreement, a copy of which may be found in footnote 4, supra. It would appear that approximately 8000 employees are bound by this agreement. The first section of the agreement fixes the relationship between employer vis-a-vis employee with respect to all inventions and discoveries made by the employee. The second section deals with any processes, formulae, plans, methods, etc., with which the employee becomes familiar during his tenure of employment. The suit against plaintiff and the other of defendant's competitors is based upon the second section of the agreement.

On many occasions, officers of defendant have advised its employees that the effect of the agreement is that if they should leave defendant's employ they are prohibited from using any information they may have acquired about "any of the processes, formulae, plans, circuits, devices or methods developed, acquired, manufactured or practiced at any time" by defendant. The agreement contains many of the vices condemned by courts in similar situations. First, the prohibitions continue for the lives of the employees. Then, there is no limitation on the kind of knowledge acquired while in defendant's employ. There is no distinction between information that was old and well known, whether it was described in patents owned by others than defendant, or whether it pertains to material appearing in technical publications. The testimony of one of defendant's officers indicates that it makes no difference whether the employee was thoroughly familiar with the information *before* he went to work for defendant.

As defendant's principal place of business is located in New Jersey and the contracts were entered into therein, under Stentor Electric Mfg. Co. v. Klaxon, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, we refer to the Delaware conflict of law rule and, in doing so, we find Maberry & Pollard v. Shisler, 1833, 1 Harr., Del., 349; MacKenzie Oil Co. v. Omar Oil & Gas Co., 34 Del. 435, 154 A. 883; and Phœnix Oil Co. v. MacKenzie Oil Co., 34 Del. 460, 154 A. 894; these cases show that Delaware courts in following the general conflict of law rule look to the place of contracting to determine the validity of the contract. Thus, Delaware would hold that under a situation such as is present here the law of New Jersey should determine the validity of the contract in question.

Before applying the New Jersey law to the employment contract, consideration must be given to the scope and construction of that contract. It is quite clear that the contract goes beyond the protection of trade secrets and embraces *anything* that the employee saw or learned during his employment. This is not only the plain meaning of the language used, but what is probably more important, the parties' actions, as appear from the depositions, are in accordance with this construction of the agreement.[5] The agreement, given this construction, puts a restraint upon the employees' right to labor or exercise their skill greater than is necessary for the fair protection of the defendant and, therefore, such agreement is unenforceable by injunction under New Jersey law. This is the theory of Sternberg v. O'Brien, 48 N.J.Eq. 370, 22 A. 348, 349, which is the leading New Jersey authority.[6] In that case the Vice Chancellor said: "The law is settled that a contract in

---

[5] What parties do under an agreement is an important aid in arriving at the paramount question of intent. See Attorney General v. Drummond, 1 Drury and Warren 353, 368, where Lord Chancellor Sugden said: "Tell me what you have done under such a deed and I will tell you what the deed means."

[6] The discussion of the unenforceability in equity of an agreement imposing too broad a restraint is actually dictum in Sternberg v. O'Brien because Vice Chancellor Van Fleet construed the agreement as not imposing the broad restraint claimed by plaintiff, but the excellent analysis of the Vice Chancellor has been repeatedly followed in New Jersey and may be accepted as settled New Jersey law. See, for example, Driver v. Smith, 89 N.J.Eq. 339, 104 A. 717.

restraint of labor, which seeks to prevent one of the contracting parties from exercising his skill or labor generally, without limitation as to place or time, or which attempts to put a restraint upon his right to labor or to exercise his skill greater than is necessary for the fair protection of the other party to the contract, is void." The agreement sub judice violates both of the conditions set forth by the Vice Chancellor.

· The more recent case of Tribune Association v. Simonds, N.J.Ch., 104 A. 386 is not only inapplicable but is also not inconsistent with Sternberg v. O'Brien, supra. In the Tribune case defendant entered into an exclusive contract to serve as an editorial writer and agreed not to write for any publication in competition with plaintiff *during the term*. Before the expiration of the contract he left the plaintiff's employ and began to write for a competitor. It appeared that plaintiff had spent over $35,000.00 in exploiting the defendant and that he occupied a unique position among writers upon World War I. The court allowed the injunction because the hardship upon plaintiff if left to its remedy at law was great. In fact, the hardship on plaintiff was so great that the court might have been justified in granting the injunction even though the services of the defendant were not unique.

In this type of case an interesting question arises: Where the restraint imposed is unreasonable, should a court of equity enforce the agreement to the extent that it is reasonable? Although an increasing number of jurisdictions take the view that they will enforce that part of the agreement which is reasonable,[7] New Jersey seems to have answered the query in the negative. See Sternberg v. O'Brien, supra, and Driver v. Smith, 89 N.J.Eq. 339, 104 A. 717. Although the New Jersey cases say that an agreement imposing unreasonable restraint is void, it is nevertheless clear from other language in the same opinions that the court merely means that such agreements are unenforceable in equity. The cases do not hold that such agreements are so tainted with illegality as to preclude an action at law for damages; in fact, it is assumed in cases where injunctions have been denied that an action at law may be maintained. The declaratory judgment relief to be granted in this case must be limited to the prevention of suits for injunction of an equitable nature. There is no authority in this court to enjoin an action at law for damages. Hence, defendant will be enjoined from seeking equitable relief in the Massachusetts court and any other court based upon the employment contract.

### Violation of the Antitrust Laws

Plaintiff's action for treble damages is based on the charge that defendant instituted the Massachusetts suit for the purpose "of thwarting and circumventing the anti-trust laws". There is no question but that the Massachusetts action could be enjoined because the complaint here pleads a cause of action under the antitrust laws and exclusive jurisdiction under these statutes is given to the United States District Courts. Such was the situation in Katz Drug Co. v. Sheaffer Pen Co., D.C., 6 F. Supp. 212, 214, where the district court enjoined an action in the state court in Iowa. There the court said:

"Under the law, the plaintiff cannot interpose its defense in the Iowa suit. The statute specifically limits injunctive relief to courts of the United States in all cases of anti-trust law violations. General Investment Co. v. Lake Shore & M. S. R., 260 U.S. 261, loc. cit. 287, 43 S.Ct. 106, 67 L.Ed. 244. The plaintiff in this case could not obtain the relief to which it claims it is entitled in the Iowa proceeding.

"Moreover, according to the bill, the prosecution of the Iowa case, although innocent within itself, would aid the defendant in carrying out its plan to maintain prices in violation of the anti-trust laws."

But, there is no evidence here that defendant has intended to maintain any illegal monopoly. So, too, there is an absence of facts pointing to an intent to restrain or an actual restraint on any part of goods in interstate commerce. The only allegations which are directed at violation of the antitrust laws aver that by reason of the institution of the Massachusetts suit it has been necessary for plaintiff's key personnel to be in attendance at the hearings before the Master appointed to determine the issues, with the result that its production operations have decreased and its ability to compete with defendant in the manufacture and sale of condensers has been impeded. The mere declaration that defendant has also sued three other manufacturers of electric condensers which must have likewise

---

[7] See for example the Delaware view as represented by Capital Bakers v. Leahy, 20 Del.Ch. 407, 178 A. 648.

lessened their production is not sufficient to show a restraint on commerce as that term is used in the antitrust laws. But, assuming it to be the fact that there has been a decrease in production, acts done to prevent production do not necessarily mean an interference with interstate commerce. Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044. Even a tortious prevention of manufacture is merely an indirect or remote restraint under the rule of Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas. 1912D, 734, and United States v. American Tobacco Co., 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663; Loewe v. Lawlor, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488, 13 Ann.Cas. 815. Hunt v. Crumboch, 3 Cir., 143 F.2d 902, 904, affirmed 65 S.Ct. 1545, states: "With the right of the plaintiffs to recover in some other action upon some other theory we have no concern. All that is before us is whether they have brought themselves within the purview of the Sherman Act." Here, the record is bare of any evidence that there was an intent to monopolize the supply of electric condensers, control of their price or to discriminate between potential customers. There was, for all practical purposes, only one customer and that was the government of the United States of America and as for prices, they were, in the main, determined by ceilings fixed by OPA.

Moreover, the mere institution of suit against a competitor does not bring one within the prohibitions of the antitrust laws. International Visible Systems Corp. v. Remington-Rand Inc., 6 Cir., 65 F.2d 540; Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885. If defendant here was of belief that his trade secrets were in jeopardy he did nothing more, in instituting suit in Massachusetts, than select a lawful method of protecting his claimed property. While it has been determined that defendant should be enjoined from attempting to enforce the negative provisions of the employee contracts in equity, the mere maintenance of suits at law for breach of contract can hardly be said to be sufficient to support and maintain a claim for treble damages for violation of the antitrust laws.

### Allegations of Irreparable Injury

Plaintiff argues further that since the Massachusetts suit will cause irreparable injury to plaintiff, this court should enjoin the state suit under its general equitable powers. The irreparable injury is claimed to arise because plaintiff's production and research are impaired, as a result of the necessity of attendance in court of witnesses and the production of important documents. The suit, so plaintiff claims, has damaged its relationship with the government and its other customers. These injuries are said to be of a serious nature, not only from the standpoint of plaintiff's reputation in business, but also because the delay will interfere with the production of essential materials for the United States government in the prosecution of the war. Plaintiff relies on numerous cases where a federal court, under its general equitable powers, has enjoined parties from proceeding in actions in the state courts. But, in all of these cases there was some act which had independent legal significance apart from hardship incident to any suit in a state court. Plaintiff's arguments here would apply to any suit against a company engaged exclusively in important war work, and if plaintiff were right, no action could be maintained against any such company. In Driver v. Smith, 89 N.J.Eq. 339, 104 A. 717, 720, which arose in connection with the first World War, the court held that in an action strictly between individuals, the court will not refuse to hear a party's cause merely because the effect of granting him relief may be embarrassing to the party against whom the relief is granted and who is engaged in the performance of war work. During the course of the opinion the court said: "So long as the courts are open the rights of parties must be determined by the existing law. It would be an intolerable situation if each court before whom the rights of individuals were litigated were permitted to determine * * * whether the granting or withholding relief would aid or injure the government in its war activities, and it would be still more intolerable were the courts permitted to base their opinion upon written statements of officers of the army, no matter how high their rank. The general government does not have to depend upon the favor of courts. Its power is limited only by such constitutional interdictions as remain in force during war. If the effect of a decree of the court, rendered under existing law, be to embarrass the government, the fault lies either with the Constitution or the legislative branch of the government for failure to confer sufficient power upon its executive or upon the executive for failure to have exercised power

**8**

conferred. So far as the present case is concerned there is no lack of power to remedy any harm which may be occasioned to the government by the enforcement of a decree of this court if it should be granted. Under existing law it has full and complete authority to take over and operate through its own agents any essential war industry. The time has not yet arrived where courts will permit the appropriation of the property of one by another upon the plea that the other needs the property for war purposes."

Today, in this war the government has means to protect its vital interests under the existing law, and that protection does not depend upon the uncertain alertness of any party litigant purporting to act in its interest. What plaintiff really says under this head of the case is that the suit in Massachusetts is annoying and to plaintiff a live nuisance. But these are always the dangers which flow from litigation. It is a threat which threatens each one of us. There is no merit in the contention made by the plaintiff in its appeal to have the court exercise its general equity powers in favor of plaintiff by enjoining the Massachusetts suit.

Orders on the motions for summary judgment filed by each of the parties may be submitted.

### On Petition for Reargument.

Defendant suggests that the court's opinion has failed to consider several points of critical importance, i. e., because it does not consider the validity of the New York contract between Brafman and defendant, and because in interpreting the application of the New Jersey law to the New Jersey contract, the opinion fails to correctly appraise an implied contract not to disclose trade secrets. Defendant claims that in any event later New Jersey cases are in variance with the court's interpretation of Sternberg v. O'Brien, 48 N.J.Eq. 370, 22 A. 348; and, moreover, the later cases enforce the implied contract not to disclose trade secrets, even though the main agreement is too broad. In support of this view reliance is on Credit Rating Service, Inc., v. Charlesworth, 126 N.J.Eq. 360, 8 A.2d 847; Taylor Iron & Steel Co. v. Nichols, 73 N.J.Eq. 684, 69 A. 186, 24 L.R.A.,N.S., 933, 133 Am.St. Rep. 753; and Trenton Potteries Co. v. Olyphant, 58 N.J.Eq. 507, 43 A. 723, 46 L.R.A. 255, 78 Am.St.Rep. 612.

I think the opinion necessarily holds, and I now specifically hold, that the New York contract between Brafman and defendant merged into the later New Jersey contract, and that all implied covenants or contracts were also merged into the later written New Jersey contract. Where parties specifically contract with respect to a subject on which the law implies a contract, the terms and provisions of the written specific contract control so long as no other rule of law is violated. This principle is supported by Taylor Iron & Steel Co. v. Nichols, 73 N.J.Eq. 684, 69 A. 186, 24 L.R.A.,N.S., 933, 133 Am.St.Rep. 753, upon which defendant itself places much reliance. I do not think that later New Jersey cases weaken the rule of Sternberg v. O'Brien, 48 N.J.Eq. 370, 22 A. 348. The principle for which Sternberg v. O'Brien is cited is—as defendant claims and as this court recognized in its opinion—dictum in that opinion, but that dictum has been followed in later New Jersey decisions and Sternberg v. O'Brien is still considered the leading case. It is true, of course, that where the subject matter of the contract is readily divisible, courts will specifically enforce that part which is not in restraint of trade. But the contract in suit is not readily divisible and hence no part of it may be enforced in equity.

The case of Taylor Iron & Steel Co. v. Nichols, 73 N.J.Eq. 684, 69 A. 186, 24 L.R.A.,N.S., 933, 133 Am.St.Rep. 753, may at first blush impel a conclusion at war with the one reached here. In that case the agreement of employment forbade defendant from disclosing any knowledge which he might have relating to making steel which had been used in the plaintiff's plant whether it was a matter of common knowledge or not. The Court held that the necessary result of the enforcement of the contract would be that the defendant must either work for the plaintiff or remain idle, and further held that the contract was an unreasonable restraint and refused to enforce it. The Court also held that there was an implied contract arising from the confidential relationship of the parties that defendant would not disclose plaintiff's trade secrets, and it remanded the case so that the Vice Chancellor might determine what the plaintiff's trade secrets were in order that the defendant might be enjoined from disclosing them. I think defendant here misinterprets the opinion because the only trade secrets subject to the implied

agreement were secrets not covered by the specific contract. In the case at bar, on the other hand, I have interpreted the agreement to be all-inclusive and that it applies to all knowledge acquired from working with defendant and all trade secrets. I am accordingly of the opinion that the written New Jersey agreement is not divisible and that no part of its negative covenants can be enforced in equity.

Defendant complains further of the opinion because it is not clear whether it is intended to apply to similar employment contracts (involving defendant and other persons wholly unrelated to the suit at bar) which were entered into in states other than New Jersey and which admittedly were not merged into any New Jersey contract. If the opinion may be interpreted this way, it is, of course, too broad, and I now specifically hold that defendant is simply enjoined from attempting to enforce in equity the written New Jersey contract between it and Brafman. It was not intended in the opinion to pass upon the validity of other employment contracts governed by the laws of states other than New Jersey, or of any other contract between defendant and persons not parties here.

Defendant further argues that since the court found that there was no violation of the anti-trust laws it lacks jurisdiction because there was no affirmative finding that jurisdictional amount of $3,000 was involved. The complaint alleged the amount in controversy exceeded the jurisdictional amount. This was not disputed by defendant. And what is more important, the depositions and the nature of the action plus the allegations of the complaint are sufficient to show that the suit involves much more than the jurisdictional amount. Defendant further charges that the opinion is erroneous since once the court found no violation of the anti-trust laws it is without power to enjoin the proceeding in the Massachusetts Court or in any other court by virtue of Sec. 265 of the Judicial Code, 28 U.S.C.A. § 379. This argument is obviously without merit for there is no intention of enjoining the Massachusetts Court or any other court; the injunction will simply operate on the defendant.

I have carefully considered the other arguments made by the defendant in its Petition for Reargument, but have rejected them as being without merit. The Petition for Reargument is accordingly denied.